RALPH H. ORTHWEIN v. GERMANIA LIFE INSURANCE COMPANY OF CITY OF NEW YORK and GENEVA LEOTA ORTHWEIN, Appellants.

In Banc, November 17, 1914.

1. **PLEADING: Liberally Construed.** Allegations of pleading must be liberally construed with a view to substantial justice.

2. ———: **Insurance Policies: Lex Loci: Venue: Margin.** A venue laid in the margin of the petition, thus, "In the Circuit Court, City of St. Louis, State of Missouri," will be the venue for all other matters requiring a venue arising from the petition, none special being pleaded. So that, where the petition is grounded on policies issued by an insurance company, alleged to be organized in another State, but authorized to do business in this State, it will not be *held*, in adjudging its sufficiency to state a cause of action, upon a demurrer thereto, that it is silent as to where the policies were executed or delivered, in that it contains no allegations showing they were governed by the laws of this State; for, if it alleges that the company was authorized to do business in this State at all times mentioned in the petition, that it did business by issuing the policies sued on on a given date, whereby it agreed to do certain things, and that plaintiff paid certain premiums and made certain demands of the company which he seeks to have en-forced, those allegations, taken with the venue stated in the margin, are sufficient to authorize a holding that the policies are governed by the laws of this State and the contract is to be construed according to its statutes.

3. ———: ———: ———: **Material Error: Must Be Believed to Exist.** Error, to be reversible, must be material, and the court must believe it material. So that, where defendants demurred to plaintiff's petition, charging it did not state a cause of action, and their demurrer being overruled appealed,

the appellate court cannot reverse the trial court's ruling on the theory that it cannot be determined from the petition whether it is a contract under the laws of this State, if it must guess (1) as to whether it states a contract made and delivered in this State or (2) if made and executed in another State whether the law thereof is the same as Missouri's.

4. ————: ————: ————: **Venue: Impliedly Admitted by Demurrer.** A demurrer to plaintiff's petition by necessary implication admits the insurance policies sued on are governed by the laws of this State, if it charges specifically, by way of confession and avoidance, (1) that a named statute does not apply to the facts and (2) that, if held to apply, it must be brushed aside as unconstitutional.

5. **INSURANCE POLICY: Wife as Beneficiary: Vested Right: Constitutional Statute.** A wife named as beneficiary in a life insurance policy issued on the life of her husband, upon which he alone paid the premiums, has no such vested rights therein as renders unconstitutional a statute which divests her of all interest therein in the event of her death or divorce before the death of the husband; even if spoken of as vested, they are subject to be divested on the condition subsequent. That statute must be read into the policy and become a vitally operative part thereof, as much so as if its very terms were read into it; and it is applicable to all divorced wives and to all insurance policies issued after its enactment. And hence there is nothing in its provisions permitting the husband, who has alone paid all the premiums on a policy issued on his life, to name another beneficiary, in the event of the wife's divorcement, that deprives her of her property without due process of law, or denies her the equal protection of the laws, or authorizes an unreasonable seizure of her property, or its taking for a private use, or violates any constitutional provision against special or class legislation.

6. ————: **Freedom of Contract.** Freedom to contract as one pleases is not an element of the life insurance business; on the contrary, the right to make insurance contracts is subject to statutory regulation.

7. ————: **Wife as Beneficiary: Change: Divorce for Husband's Fault.** Sec. 6944, R. S. 1909, authorizing the husband to designate another beneficiary in a life insurance policy, issued on his life for the benefit of his wife and paid for by him alone, "in the event of the death or divorcement of the wife before the decease of the husband," entitled him to designate another beneficiary whether he or she was found to be the injured party in the suit for divorce, and whether it was brought by him or her. The right is vouchsafed to the husband without regard

as to who was adjudged to be at fault in the divorce proceeding, and the statute violates no vested right of the wife, and is constitutional.

8. ——————: ——————: ——————: ——————. The word "divorcement" used in the statute, means "divorce," and does not imply affirmative action by the husband alone. No other significance is to be given it. Even if it be true that in a Biblical sense the word "divorcement" primarily implied affirmative action by the husband, that fact would have no tendency to prove the word was used in a Biblical sense by the General Assembly when inserted in section 6944.

9. **STATUTES: Construction: Unambiguous.** A plain and unambiguous statute stands on its own reason, and when it is plain and unambiguous courts are not allowed to vary, enlarge or reduce it, or read into it any exceptions or restrictions, or seek for any fanciful public hurts its enforcement may induce, because of speculative theories of their own or apprehension of others.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

AFFIRMED.

*Fidelio C. Sharp* and *Henry H. Oberschelp* for appellants.

(1) Plaintiff has not stated a cause of action unless the allegations of the petition are sufficient for reliance on section 6944, Revised Statutes 1909. Blum v. Ins. Co., 197 Mo. 513. (2) The Missouri statutes have no extra-territorial effect. The petition is silent as to where the policies were executed or delivered, and contains no allegations to show the policies were governed by any of the laws or statutes of Missouri. For aught appearing, the policies were executed in New York or some other State or country, and were subject to the laws of some other State or country. In that event no Missouri law or statute would apply. Hewitt v. Harney, 46 Mo. 371; Hilburn v. Ins. Co., 129 Mo. App. 670. (3) Even if the policies were

Missouri contracts and governed by the laws of Missouri, still there would be no cause of action. As the divorce was rendered in favor of the wife against the husband, the statute does not apply, that not being a "divorcement of the wife" as the term is therein used. Sec. 6944, R. S. 1909; Funk & Wagnall's New Standard Dictionary (1913), subject, Divorce, 3, 4; R. S. 1909, secs. 359, 2370. (4) "Again, another guide to the meaning of the statute is found in the evil which it is designed to remedy." It should be restricted to that, and not create new evils. Church v. United States, 143 U. S. 463; Blum v. Ins. Co., 197 Mo. 528; U. S. Cas. Co. v. Kacer, 169 Mo. 313; Westerman v. Supreme Lodge, 196 Mo. 711; Rose v. Ins. Co., 153 Mo. App. 97; Perry v. Strawbridge, 209 Mo. 632. (5) Even though the statute by its strict letter be applicable to this case, which we deny, yet it will be construed in the "light of reason." The spirit will prevail. Perry v. Strawbridge, 209 Mo. 621; Church v. United States, 143 U. S. 457; Oil Co. v. United States, 221 U. S. 1; Black on Interpretation of Laws (2 Ed.), secs. 29, 30. (6) Legislators as well as judges have always been regardful of the rights of women. No one can read the numerous acts of the Legislature from the first to the last, without being convinced beyond question that it has ever been the policy of this State to see that the innocent wife on divorcing her husband for his fault, lose none of her rights or property, but to retain all, to continue to hold the husband liable for her support, and under no circumstances to allow the guilty husband to gain an advantage by the divorce. This section must be construed in pari materia with those statutes, and in harmony with that settled policy. Saunders v. Saunders, 144 Mo. 494; Westerman v. Supreme Lodge, 196 Mo. 731; R. S. 1909, secs. 359, 2375, 2378. (7) If said Act of 1899 (now sec. 6944, R. S. 1909) is construed to apply to this case, divorce granted wife for

husband's fault, and to authorize a decree in favor of plaintiff, then it is unconstitutional and void, and in violation of the fourteenth amendment to the United States Constitution, in denying to this defendant, Geneva Leota Orthwein, the equal protection of the laws: First, by making an unjust and unreasonable distinction and discrimination in penalizing innocent wives, and favoring, encouraging and rewarding offending husbands for their wrongs; second, by depriving a wife, even if innocent, of her rights and property as a beneficiary in a full-paid policy on her husband's life, yet continuing to allow the husband, even if guilty, to retain his interest as a beneficiary in a policy on her life; and third, by allowing a guilty husband, in case of divorce granted to the wife for his fault, both to retain his interest and ownership of a policy on the wife's life in the husband's favor and also to become the owner of the policy on his life which had been in favor of the wife, while the innocent wife, by such a divorce, loses her vested interest in a policy on her husband's life in her favor, and gets nothing, he retaining his absolute interest in a policy on her life in his favor. Fourteenth Amendment to U. S. Constitution; Cooley's Constitutional Limitations (7 Ed.), p. 561; Sutherland, Notes on U. S. Constitution, p. 733; Muller v. Oregon, 208 U. S. 418; Ritchie v. Wayman, 244 Ill. 509; State ex rel. v. Miller, 100 Mo. 439; Railroad v. Greene, 216 U. S. 417. (8) For the same reasons if the act is held applicable to this case, then it is in violation of section 53 of article 4 of the Constitution of Missouri, in that it is class and special legislation in favor of guilty husbands and against innocent wives, without any right or reason therefor. State ex rel. v. Miller, 100 Mo. 448. (9) If the act is held to apply to this case, then it is in violation of the fourteenth amendment to the United States Constitution in that it deprives this defendant of her property without due process of law,

in that upon the granting of a divorce in favor of the innocent wife and against the guilty husband for his wrong, property absolutely vested in the wife, paid-up insurance policies in her favor on her husband's life, is taken away from her and given to the guilty husband. Ritchie v. Illinois, 155 Ill. 108; State v. Julow, 129 Mo. 163.

*William R. Orthwein* and *Fred H. Bacon* for respondent.

(1) The venue of the case at caption applies to all the facts alleged. Sec. 1823, R. S. 1909; Benton v. Brown, 1 Mo. 393; Burnes v. Burnes, 61 Mo. App. 618; Palmer v. Railroad, 76 Mo. 217. (2) When the place of making contract is not alleged in the body of the petition, or even where it is alleged that the contract was made in a different State than where the suit is brought, and the law of such State is not properly pleaded and proven, then the court will presume that the law of any such other State is the same as our law and the law of the forum controls. The Missouri law therefore applies to this case. Flato v. Mulhall, 72 Mo. 522; Matthews v. Railroad, 219 Mo. 550; Wyeth Co. v. Lang, 54 Mo. App. 147; Waite v. Bartlett, 53 Mo. App. 381; Law v. Crawford, 67 Mo. App. 154; Stephen on Pleading (9 Am. Ed.), chap. 281; 22 Ency. Pl. & Pr. 788, note 5, 812, note 1. (3) Appellant herself relies on Sec. 6944, R. S. 1909, to sustain her appeal. If the Missouri law does not apply, then the above section would not apply to appellants' side of this case. Blum v. Ins. Co., 197 Mo. 513; Haven v. Ins. Co., 149 Mo. App. 291. (4) Appellant's constitutional defenses are not well taken. Any vested interest appellant claims in policies sued on is by virtue of Sec. 6944, R. S. 1909, which said section also contains the proviso allowing the husband to change the beneficiary in case of death or divorce-

ment. The statute must stand or fall as a whole, and appellant cannot claim the benefits of one part and contend that the other half is unconstitutional. Sec. 6944, R. S. 1909; Blum v. Ins. Co., 197 Mo. 513. (5) The purpose of the enactment of statutes taking away from the husband the right to assign the policy, or in any way interfere with it, was to protect the wife, so that in case she survives him, the proceeds might go to her free from his creditors. Insurance Co. v. Brant, 47 Mo. 419; Pollitz v. Robinson, 72 Mo. 201; Reilly v. Hickcox, 72 Mo. App. 617. (6) Section 6944, above cited, in an exemption statute, must be construed liberally and does not deprive appellant Orthwein of any vested right, but merely reserves in the second paragraph of the statute certain rights to the husband which he had prior to its enactment, and part of which, the first paragraph, deprives him of, and is directly in line with the New York statute. Kittel v. Domeyer, 175 N. Y. 205; Wanchaaf v. Masonic Mutual, 41 Mo. App. 206. (7) The statutes of the State of Missouri, regulating the business of life insurance, form part of the policies referred to in the petition, the same as recited therein at length. Appellant Orthwein's interest was always subject to the reservations in this statute and was subject likewise to the reservations in the policies, as appears in the petition, such as the cancelling of said policy for its cash surrender value, by the husband. Ins. Co. v. Cravens, 178 U. S. 389; Cravens v. Ins. Co., 148 Mo. 583; Kern v. Supreme Council, 167 Mo. 471. (8) The statutes being part of the policies at the time they were written, the right to change the beneficiary was the same as if reserved in the policy itself. Section 6944 merely does away with the necessity of inserting the reservation in the policy itself, in case of death or divorcement. Robinson v. Ins. Co., 168 Mo. App. 259; Waring v. Wilcox, 8 Cal. App. 317; Equitable Life Assn. Soc. v. Stough, 45 Ind. App. 411. (9) The

only possible interpretation of section 6944 shows that the section meant that the husband should have the right to change the beneficiary regardless of who got the divorce.   Haven v. Ins. Co., 149 Mo. App. 291; U. S. Casualty v. Kacer, 169 Mo. 315.   Under the definition of word "divorcement:"   Murray's English Oxford, Century, Standard and Webster's Dictionaries; March's Thesaurus.

LAMM, C. J.—Defendants unsuccessfully demurred to a second amended petition, and (standing on their demurrer, refusing to plead over and suffering judgment on the merits) appealed.

Appellant insurance company joining in the appeal but not in the abstract and brief, we assume it stands indifferent and neutral between plaintiff and its co-defendant.   As it has to respond in any event, an adjudication vesting title to the policy fund in one or the other protects it.

The caption of the amended petition (said to be of significance on a question presently dealt with) runs: "State of Missouri, City of St. Louis, ss.   In the Circuit Court, City of St. Louis."   Next follows the names of the parties plaintiff and defendant.   The petition reads:

"For cause of action by way of amended petition and by leave of court, plaintiff states that the defendant, the Germania Life Insurance Company of the city of New York is, and was at all the times hereinafter stated, a corporation under the laws of the State of New York engaged in the business of life insurance and duly authorized to do business as such in the State of Missouri.

"Plaintiff states that heretofore, to-wit, on the 20th day of June, 1900, he procured to be issued a policy of insurance on his life by defendant Germania Life Insurance Company for the sum of ten thousand

dollars, said policy being number 213,368, and dated June 20, 1900, the annual premium on which was two hundred and seventy-six dollars. Said policy provided that upon the death of plaintiff the said defendant company would pay the sum of ten thousand dollars to the then wife of plaintiff, defendant Geneva Leota Orthwein, for her sole use, if living at the time of his death, or in case of her previous death to the executors, administrators or assigns of plaintiff. It was also agreed in said policy that if it should lapse as to its original amount by nonpayment of premium after it should have been three years or more in force, it should remain valid, subject to all its conditions, for as many twentieths of the amount of said policy as there should have been whole years' premiums paid.

"Plaintiff further states that heretofore, to-wit, on the 20th day of June, 1900, he procured to be issued by the defendant Germania Life Insurance Company another certain policy of insurance upon his life for the sum of twenty thousand dollars, the annual premium on which was the sum of five hundred and fifty-two dollars; said policy is dated June 20, 1900, and is numbered 213,367, whereby said insurance company promised and agreed, upon due notice and proof of the death of plaintiff, to pay the sum of twenty thousand dollars to the then wife of plaintiff, defendant Geneva Leota Orthwein, for her sole use, if living at the time of his death, or in case of her previous death, to the executors, administrators or assigns of plaintiff. It was also agreed in and by said policy that if it should lapse as to its original amount by nonpayment of premium after it should have been three years or more in force it should remain valid, subject to all its conditions, for as many twentieths of the amount of said policy as there should have been whole years' premiums paid.

"Plaintiff states that upon the first mentioned policy of insurance he paid the first and, to-wit, five subsequent annual premiums, amounting in all to the sum of $1656, and on the second mentioned policy aforesaid he paid the first annual premium and, to-wit, five subsequent annual premiums, the total amount so paid being $3312, and the total amount of premiums paid on both the said policies amounting to the sum of $4968.

"Plaintiff states that no part of said premiums. was paid by defendant Geneva Leota Orthwein, and that said policies have at all times since the issue thereof remained in the sole possession of plaintiff, and are now in his possession.

"Plaintiff states that heretofore, to-wit, on the 10th day of July, 1907, upon application of defendant Geneva Leota Orthwein, suing under the name of Neva L. Orthwein, plaintiff and said defendant Geneva Leota Orthwein were duly divorced by the circuit court of Lawrence county, Missouri, and upon the entry of said decree of divorce, said Geneva Leota Orthwein ceased to be the wife of plaintiff. Plaintiff did not appear in said cause and made no defense.

"Plaintiff states that the said policies were made payable as aforesaid without any consideration moving from said defendant Geneva Leota Orthwein to plaintiff. That he has demanded of said defendant Germania Life Insurance Company that it change the beneficiary in each of said policies to his estate and recognize plaintiff as the sole owner of said policies, or to cancel the same and issue others in their place, or to accept a surrender of said policies from plaintiff for the stipulated surrender value, all of which said Germania Life Insurance Company has refused to do, unless said Geneva Leota Orthwein will execute a release or assignment of said policies to him. That the said policies are and always have been the property of plaintiff; that he has demanded of said defendant

Geneva Leota Orthwein that she release the said poli-
cies to him or release any claim which she might have
thereon, because of being named as beneficiary
therein, but she has refused to execute any such re-
lease.

"Wherefore, plaintiff prays that by decree of this
court he may be adjudged to be the sole owner of said
policies and that the name of the beneficiary in each
of said policies be changed to his estate and that said
defendant Geneva Leota Orthwein has no claim or
interest therein; that said Germania Life Insurance
Company recognize plaintiff as the sole owner of said
policies, and obey the direction of plaintiff as to the
disposition of the same.

"And plaintiff prays for all such other and fur-
ther relief to which it may be entitled the premises
considered."

The demurrer challenged the petition, for that:

(a)   It did not state facts sufficient to constitute
a cause of action.

(b)   On the hypothesis that the petition counts
on section 6944, Revised Statutes 1909, as applicable
and controlling, then the demurrer challenges the
application of that section in the first instance; and in
the second instance challenges its constitutionality, in
that:

*First.* It violates the 14th Amendment of the
U. S. Constitution by depriving defendant Geneva of
her property without due process of law and denies to
her the equal protection of the laws.

*Second.* It violates section 30, article 2, of the
Constitution of Missouri by depriving said Geneva of
her property without due process of law.

*Third.* It violates section 11, article 2, of the same
Constitution by an unreasonable seizure of Geneva's
property without any wrong on her part.

*Fourth.* It violates section 20 of the same article
by taking the property of Geneva for private use.

This "taking" is explained by the demurrer to be that "the guilty husband by wronging his wife so that she divorces him, can appropriate to his own use what has theretofore been the sole and absolute property of the wife and in which he had theretofore no interest whatever."

*Fifth.* It violates section 53, article 4, of the Constitution as special and class legislation in favor of "guilty husbands without any risk or reason therefor."

While the blunt question is: Is the petition good on demurrer? yet, as seen in the demurrer, it splits itself into ramifications and is approached in appellants' brief from sundry angles. The statute noticed in the demurrer reads:

"Any policy of insurance heretofore or hereafter made by any insurance company on the life of any person, expressed to be for the benefit of the wife of the insured, shall inure to her separate benefit, independently of the creditors, executors and administrators of the husband: Provided, however, that in the event of the death or divorcement of the wife before the decease of the husband, he shall have the right to designate another beneficiary, upon written notice to the company, but such notice shall not be effected, unless indorsed upon the policy by the president or vice-president and secretary of the company issuing the policy. But when the premiums paid in any year out of the funds or property of the husband shall exceed the sum of five hundred dollars, such exemptions from such claims shall not apply to so much of said premiums so paid as shall be in excess of five hundred dollars, but such excess shall inure to the benefit of his creditors."

Other statutes drawn within the lines of the discussion will be noted in due course. We are of opinion the demurrer was well ruled. Because:

(1)     The first proposition advanced is that the petition states no cause of action for that it is silent on *where* the policies were executed or delivered. It is contended that it contains no allegations showing the policies were governed by the laws of this State, hence (counsel say) as our statutes have no extra-territorial force, it bears a fatal vice on its face.

*Pleading: Venue: Insurance Policy.*

The proposition, at best uncommonly subtle, is novel and we think unsound for the following reasons:

Allegations of pleadings must be liberally construed with a view to substantial justice. [R. S. 1909, sec. 1831.] Now, at a very early day it was ruled "that where there is a venue laid in the margin of the declaration, or in the commencement, that shall be the venue for all other matters (requiring a venue, but having none special) contained in the declaration." [Benton v. Brown, 1 Mo. 393.] So, too, the statute prescribes that the venue shall be laid in the margin of the petition. [R. S. 1909, sec. 1823.] So far as we stand advised, the point in hand has never been made since Benton v. Brown was ruled. Maybe up to this time, it was abandoned as unprofitable after that decision. At any rate, if the petition is measured by the rule laid down in the Benton-Brown case, it is well enough; for it alleges that defendant insurance company was authorized to do business in the State of Missouri at all times mentioned in the petition. It next states that it did business by issuing two insurance policies on a given date whereby it agreed to certain things; that plaintiff paid on the policies certain premiums and made certain demands on the company. Under the Benton-Brown rule the venue (the *locus in quo*) of all those things is laid in the State of Missouri by virtue of laying the venue once in the margin. The word "venue," as used in statutes and legal exposition, is elastic and broad enough in meaning to include not only the county in which

an action is brought, but the place in which a fact happened. [Black's L. Dict. (2 Ed.), tit. "venue."]

Not only so, but by necessary implication the demurrer admits the policies are governed by the laws of the State of Missouri in force at the time unless certain things are true. This follows from the fact that it goes on to allege specifically (by way of confession and avoidance), first, that a named statute does not apply to the facts; second, that if held to apply then it must be brushed aside as unconstitutional.

Moreover, look at the matter from another viewpoint: Error, to be reversible, must materially affect the merits of the action and we must "believe" that is so. [R. S. 1909, sec. 2082.] This appeal is taken from a judgment on the merits, one rendered in a court of general jurisdiction—a court presumed to proceed by right and not by wrong. As prescribed by the statute just cited, if we reverse it we must do so because we *believe* the merits are materially affected. Are we asked by appellants to do that (to-wit, act on our *belief*) on the contention we are considering? Not at all. We are asked to reverse the judgment on one of two *guesses*: First, that the policies were New York contracts in spite of the fact that the company was doing business in Missouri. Why should we guess that way, or guess at all, when the lawmaker prescribes (not that we must guess, but) that we must believe?

Again, in those States carved out of what was once British territory the common law is presumed to obtain. In those States carved out of territory acquired from Mexico, France or Spain the common law (absent a showing *contra*) is not presumed to obtain. In this condition of things appellants put us in the pickle of having "another guess coming," to-wit, a guess that the policies are contracts of some State carved out of what was once British territory

where the common law is presumed to be in force; for, observe, if the policies were contracts of a State carved out of other than British territory, then, absent a showing as to what the pertinent statutes were, as here, the court was authorized to apply our own laws to the policies. [Mathieson v. Railroad, 219 Mo. l. c. 550 et seq.; Thompson v. Railroad, 243 Mo. l. c. 349.] In that view of it, we decline to make that guess also.

Speaking of guessing there is an amusing delusion abroad in the land to the effect that guessing is a working tool in administering law. It is now and then loosely (and jocosely) said, for example, that an appellate court has the *last* guess at the law, implying thereby, that the trial court has the *first,* and that each do it. Alas! how often must wisdom cry aloud in the streets and proclaim it from the housetops that the law is the perfection of reason? If guesses were allowed, then in the "bright lexicon" of jurisprudence "there would be no such word as" reason. Peradventure, too, if guesses were horses, every judge would gaily ride, and—but enough of that.

We rule the point against appellants.

(2) It would, we think, be to involve ourselves in what Sir Frederick Pollock once termed "a perpetual flux of speculative ideas" to see in the statute supra (Sec. 6944, R. S. 1909) anything depriving defendant Geneva of her property without due process of law, or anything denying to her the equal protec-. tion of the law, or any unreasonable seizure of her property, or any taking of the same for private use, in a constitutional sense, or any violation of the constitutional provision against special or class legislation. We will presently come to a construction of that statute as well as to a determination of the question whether it applies to this case. For the present, on the several contentions that it flies in the face of the Federal or State Constitutions in the particulars

mentioned, it is sufficient to say that we perceive no substance in them. The statute does not interfere with the vested rights of Geneva. In strictness, to be *vested* a right must be "fixed, accrued, absolute." [Bl. L. Dict. (2 Ed.), tit. "vested."] There may be, of course, a present fixed right of future enjoyment and that would be a vested right, and there may be rights so vested as to be subject to divestiture. In policies of insurance on the life of her husband in her favor, *which he took out after the enactment of that statute,* and on which the premiums are paid solely by him, she has rights but no *vested* ones in a strict legal sense. *Contra,* her rights are either contingent on the absence of her death or divorcement and on his naming a new beneficiary after either event; or, if spoken of as vested, they are subject to be divested on condition subsequent. According to all acceptable doctrine that statute must be read into the policies and become a speaking and vitally operative part thereof. [Cravens v. N. Y. Life Ins. Co., 148 Mo. 583.] Suppose, to illustrate, the policy actually read that in case of the death or divorcement of the wife the husband could name another beneficiary. What legal infirmity would attend that provision? Yet if the statute be read into the policy and became an integral part of it, the result is precisely the same as if the provision was originally a policy term. There is an imperative implied call for it and the policy is rounded into certainty by the maxim: *Id certum est quod certum reddi potest.*

The foregoing pronouncement is steadied and fortified by another view, to-wit, freedom to contract as one pleases is not an element of the life insurance business, but it is uniformly held (on the solidest grounds of public policy) that the right to make insurance contracts is subject to statutory regulation. [Dezell v. Fidelity, etc. Co., 176 Mo. l. c. 266; Burridge v. Ins. Co., 211 Mo. l. c. 172-3, 180.] So, we say again

that with that statute read (as it must be) into policies coming into existence after its enactment, as here, Geneva took under and subject to the terms of the statute and not otherwise, and we see no place where due process of law is denied her, or where she can complain of an unreasonable seizure of her property, or the taking of her property for private use. So, the statute being on its very face a general one, applicable to all divorced wives and to all insurance policies issued under like conditions, we fail to see how it is justly open to the criticism that it denies equal protection of the law to her or that it is special legislation. A careful study of appellants' brief and the authorities cited therein to sustain the views advanced, has not led to the conclusion that those views are sound or that the subject justifies extended exposition. The stiff and chief rule is that before a statute can be held unconstitutional there must be no two ways about it. Its infirmity must appear beyond any reasonable doubt. A strong presumption of its validity exists and it reposes in the friendly bosom of that presumption until such time as it is made to appear (after caution and full consideration) that its unconstitutionality is made out in accordance with stringent rules in that behalf. [Board of Commissioners v. Peter, 253 Mo. l. c. 530.]

Some other theories advanced apply as well to remaining questions and will receive attention presently.

We rule constitutional points against appellants.

(3) It is argued the statute quoted does not apply. It is a bit difficult to delimitate by metes and bounds the theories advanced in this behalf. We are inclined to the notion that they relate somewhat to the interpretation of the statute, a question we take next. But attending to the point, why does the statute not apply? If it does not apply what one does apply? Appellants put their finger on no other. To

get the right perspective let us take a glance at a group of statutes. By section 6941 a married woman may insure the life of her husband in her own name or in the name of a third person for her benefit and in case she survive him, the policy sum becoming due is payable to her use free from the claims of the representatives of the husband or of any of his creditors, provided the premiums on such policy shall have been paid by her out of her funds or property. That statute does not fit the facts of this case as set forth in the petition. By the next section of the insurance act (Art. 2, sec. 6942) the lawmaker directs that if the wife die before the husband the policy sum shall be payable to her heirs, etc., unless otherwise stipulated in the policy. It would seem that sections 6941 and 6942 relate to the same subject-matter. The next section, 6943, provides a scheme whereby an unmarried woman may insure in her own name or in the name of a third person the life of her father or brother for her sole use. That statute does not apply. The next section is the one in question. There was a statute, somewhat relating to the subject-matter, in existence in 1889 (R. S. 1889, sec. 5854) and which was brought forward as live law from former revisions. But in 1899, section 5854, supra, was made over and enacted practically as a new statute (Sec. 7895) with substantially new provisions and with old ones eliminated or modified. It now appears in the 1909 revision as section 6944. As already said, it was in force several years before the policies in this case were issued. Mrs. Orthwein did not insure or cause to be insured the life of her husband, nor did she pay the premiums. Hence, as said, she can claim nothing under section 6941. To the contrary, the allegations of the petition, without naming section 6944, bring the facts precisely within the purview of that section. Hence, the point made that the statute does not apply is without merit.

In leaving the point another observation is not amiss. If the statute applies, as we have just held, then Geneva is put in a strait betwixt two, to-wit, she asserts her rights under a statute which she complains of as unconstitutional in the same breath. As a general rule that may not be done. [State ex rel. v. McIntosh, 205 Mo. l. c. 607 et seq.] Must she not take the bitter with the sweet and stand on the whole law if on any interdependent part of it? If the statute permit her husband to withdraw the premiums from his creditors and encourages her husband to take out policies of insurance in her favor subject to the condition and with the proviso that he may name a beneficiary in case of her divorce or death, may she take the benefit of the law with one hand and repudiate its burdens with the other? The question whether the proviso (which contains the right to change the beneficiary on the death or divorcement of the wife) is such interdependent part of· the section that the latter must stand or fall as an entirety is not argued in briefs and as it is not necessary to our case, we pass it by.

(4) Appellants with animation maintain the proposition that the proviso does not cover the case at bar, to-wit, a case where the wife obtains a divorce as the innocent and injured party. They insist that the reason of the thing is the other way, hence it must be ruled that the lawmaker intended his law to cover only a case where the husband procured the divorce and the wife was the guilty· party. The · identical question was put to this court in 1906 in Blum v. Insurance Co., 197 Mo. 513 (*vide* pp. 520-1), and was set to one side as not necessary to a decision, since that case broke on other points (p. 531). Four years subsequently the question was presented to the Springfield Court of Appeals in Haven v. Insurance Co., 149 Mo. App. 291, and was ruled against the present contention of appellants. We are asked to explode the

doctrine of that case but decline to do so; for we think it soundly ruled, having regard to those two instruments which Coke says impugn or confirm all things, to-wit, reason and authority.

That learned court ruled that the word "divorcement" and the word "divorce" have an equivalent meaning in good usage, to-wit, the dissolution of the marriage tie, and that this meaning is wholly distinct from the question of who was in fault in bringing about the dissolution. It held that such meaning must be attached to the word unless the purpose to be attained by the enactment required a different meaning. It then proceeded to consider the purpose of the law, the mischief to be remedied, the purpose of the particular form of insurance involved, the state of the law at the time of the enactment, the question whether the wife had a vested right in the policy fund or such form of policy issued after the enactment in question, and the public policy to be observed and preserved, the fact that unless the husband could change the beneficiary on the divorce of his wife a policy on his life would likely lapse for nonpayment of premiums on his part, the fact that unless he could change the beneficiary the policy fund would be diverted from those he was under a moral duty to provide for (for example, children, etc.) to the one he was no longer under a moral duty to provide for on his death—finally summing up as follows:

"Our conclusion is that the purpose underlying this statute is to vouchsafe to the husband without regard to who was in fault in the divorce proceedings the same freedom of action in providing for those whom he might be under some moral obligation to provide for after his death that he would have had if the marriage relation had never existed between him and the defendant Pearl L. Haven. The purpose underlying all contracts of life insurance where the policy is secured and the premiums paid by the insured

is to provide for those dependent upon him after his death and when the divorce between him and his wife was granted he would no longer feel the obligation to provide for her resting upon him, and for this reason we think the intention of the Legislature was to leave him unhampered when in that condition to provide another beneficiary for whose benefit he would be willing to continue the payment of the premiums and thus keep the policy alive.''

It is possible appellants' brief in the instant case approaches the question from one or another angle not considered by the Court of Appeals in the Haven case. If it were not for that possibility we would close the case at this point by adopting the reasoning and conclusions of our brethren of the Springfield Court of Appeals as the be-all and end-all of the matter.

Attending to that phase of it, it is argued that the word *divorcement* primarily involves the concept of affirmative action by the husband. If that view be adopted, then the next step in the evolution of the argument is that it means he must procure the divorce because of the fault of the wife. The argument is one no little elusive and refined, harking back to and taking root in extreme antiquity. We are referred to Deut. 24:1-3 which provides that if a man's wife find no favor in his eyes because of some ''uncleanness in her,'' then he should ''write her a bill of divorcement and give it in her hand.'' Approaching the matter with diffidence and disposing of it with modesty (for do we not speak to a bar learned on the subject?) we make these observations: It may be conceded to appellants that the particular bill of divorcement referred to by Moses was the affirmative act of the husband, therefore involved action on his part and some ''uncleanness'' in her; but we pause to ask: Could a wife divorce her husband at all under the laws of Moses? Bishop says that was a power lodged

with the husband (1 Bish. Mar., Div. and Sep., sec. 54) and could be exercised "pretty much or entirely at pleasure." In that view of it the word certainly involved "action" by the husband. Why so? Because the action was masculine and masculine alone in that era among the Jews. However that be, the mere fact that the word *divorcement* was used by Biblical translators has no tendency to prove it was used in a Biblical sense by the General Assembly in enacting section 6944. Maybe so, maybe no. Let him speak who knows, not I. Nor are we cited to any authority showing that the word in modern usage involves action by the husband—admitting it did so in Bible times. This because: When the race was young, speaking in a colloquial and not a scientific sense, divorces were acts of the parties, not of courts. Divorce seems to have been a mere personal equation and in nowise involved a public policy or a status. The husband could "put away his wife" under the oldest code in the world, that of Hammurabi, B. C. 2285-2242, sec. 137 et seq. In that code there was a rudimentary regulation in regard to the return of the wife's "dowry," if she was put away, and, if she brought no dowry, he was to give her "one mina of silver for a divorce." [Sec. 139.]

(*Nota bene*: One mina of silver equalled fifty shekels; and one shekel, seventy-two and one-half cents, from which the cost of a divorce in Babylon, absent a *dot*, may be figured by the curious—if worth while.)

The duty of a husband to give his wife a "writing of divorcement" when he put her away seems to have been understood as an ancient Jewish custom by a mere reference to the fact. [Matt. 5:31; Matt. 19:7 et seq.; Luke 16:18; 1 Cor. 7:10-12.] In one of these references the right to put away the wife is said to have been allowed by Moses because of the "hardness of your hearts." The same right gentlemen had, to-

wit, that of putting away their wives, obtained in the pagan Roman Empire, but it seems also that the world had progressed to the point where it conceded the right to ladies, too. They could "put away" their husbands, the divorce being "pretty much at the pleasure of either of the parties." [1 Bish. Mar., Div. and Sep., sec. 85.] Does not everyone know that the greatest of Roman orators put Terentia, his wife, away and gave her a divorcement, because she tightened her purse strings on his call for money (she being rich and frugal and he somewhat of a spendthrift with elegant tastes)? We dismiss this bit of old gossip with the suggestion that when Cicero's head was nailed to the rostra by Antony, and Fulvia, said Antony's wife, thrust a hairpin through his dead tongue, we do not know that feminine thrust was because of his treatment of Terentia (for Fulvia, as former widow of Clodius, had private grievances of her own against his tongue); but we do know there was even then a public sentiment against a divorce by the act of the husband, a public sentiment which, crystallizing in the flux of time into law, centuries ago made a divorcement no longer a private rescission of a contract, but the solemn judgment of a court on a status involving social order and public morals. It is too far a cry to go back to Deuteronomy and exploded conditions for proof that the word *divorcement* involves the affirmative action of the husband. Its form is a little unusual, but its meaning is self-evident. It is plain enough that when either party gets a divorce both are divorced and the status existing after the separation is a divorcement and properly termed such. In that sense it is as much his as hers.

It is argued that we should read into the statute the idea of innocence in the husband and guilt in the wife, before the husband should be rewarded by the right to change the beneficiary in a policy on his life, taken and kept up by him. One answer to that is

that the lawmaker could have said so with one stroke of his pen and did not make that stroke. Why should we do for him what he declined to do for himself, when our function is to interpret and declare and not make the law? Another answer is that, when a law is plain and unambiguous in terms, we are not allowed to vary, enlarge or reduce it because of speculative theories of our own. *Ita lex scripta est* is the maxim in that behalf. A plain and unambiguous statute stands on its own reason, and this is a statute of that character. If, however, we were put to it to assign reasons for the statute, more than one suggest themselves. For instance, speaking to support, in the statute on divorce is ample provision for the allowance of alimony out of the husband's estate in accordance with the means of the guilty husband to give and the right of the innocent wife to receive.

Moreover, would not a sufficient reason be (I mean reason for not interpreting the statute in accordance with appellants' view) that the statute is one intended to induce the taking out of policies and making provisions for wives who remain wives until such time as they become widows. To that end it gives the husband power to divert the policy sum in case the wife does not become such widow, to-wit, in case of her death or divorcement. Would not appellants' view not only clog the purpose but overlook the motive of the law? Nay, would it not be unjust and immoral for the lawmaker to say to all men: "If you will insure your lives in your wives' favor and pay the premiums yourselves, I promise you you can change the beneficiaries by making new appointees in case of their death or divorcement," and then face about (through judicial interpretation) and say to one of these men who acted on the law: "The law meant to say, in case of her death *or your procuring a divorce from her because she was guilty of a breach of the*

261Mo43

*marriage contract?''* Courts should not torture or twist the statute into a device for obtaining property by false pretenses, or, what amounts to the same thing, by making of it the studied duplicity of some Delphian oracular utterance.

Again, it is argued that if the guilty husband be allowed the right to change the beneficiary, it would operate as an inducement to bad men to mistreat their wives so that they would (here notice a tang of something like contributory negligence or cooperation in the wife) obtain divorces, and all this in order that when they obtained them, the said husbands could change the beneficiaries in insurance policies. Is such argument not a happy conceit that amuses but does not convince? If of any force, should it not be directed to the Legislature and not to this court? Might one not as well argue that if husbands could *not* change the beneficiaries it would be an inducement to designing women to get divorces from those husbands carrying large policies in their favor in order to enjoy the use of such accumulations by cashing in their policies and all this in addition to alimony? We cannot well abrogate or alter provisions of law on such fanciful hypotheses.

We have pursued the matter farther than intended. Let the judgment be affirmed. It is so ordered.

PER CURIAM.—This cause coming into Banc from division on a dissent, on hearing there the divisional opinion by LAMM, C. J., is adopted as the opinion of the court. All concur, except *Bond, J.,* who dissents.