THE AMERICAN CONSTITUTION FIRE ASSURANCE COMPANY ET AL., Appellants, v. R. E. O'MALLEY, Superintendent of Insurance. —113 S. W. (2d) 795.

Court en Banc, February 25, 1938.

*Robert J. Folonie, E. R. Morrison, Homer H. Berger, Ragland, Otto & Potter* and *Igoe, Carroll & Keefe* for appellants.

*John T. Barker* and *Floyd E. Jacobs* for respondent.

FRANK, J.—Action by seventy-four stock fire insurance companies to review an order made by the Superintendent of the Insurance Department refusing to approve a proposed increase of 16 2/3 per cent in fire and windstorm insurance rates in Missouri. The judgment below went against the insurance companies.

Our rating act, Article 8, Chapter 37, Revised Statutes 1929, authorizes insurance companies transacting business in this State to promulgate an increase in rates in the manner provided in said article. Section 5864 of the rating act provides, among other things, that an insurance company may lower its rates whenever it sees fit, but that rates shall not be raised until at least ten days' notice has been given by the insurance company to the Superintendent of Insurance and his approval obtained. On December 30, 1929, all stock fire insurance companies transacting business in Missouri promulgated an increase of 16 2/3 per cent in fire and windstorm insurance rates in Missouri, notified the Superintendent of Insurance of the proposed increase and requested his approval thereof. Thereafter, on May 28, 1930, the superintendent made an order denying the proposed increase.

Section 5874 of the rating act provides, among other things, the following:

"The orders and directions of the superintendent of insurance, together with his findings or determinations of facts upon which such orders or determinations are founded, shall be reviewable by a proper action in the courts, and upon such review the entire matter shall be treated and determined *de novo*, but the burden of proof as to the unreasonableness or injustice of any order made by the superintendent of insurance shall rest upon the party or company, or companies, appealing from such order. The court shall have authority to sustain, set aside or modify the orders and directions under review."

After the Superintendent of Insurance made his order of May 28, 1930, refusing to approve the proposed increase in rates, seventy-four of the stock fire insurance companies brought the instant action in the Circuit Court of Cole County on June 5, 1930, for the purpose of reviewing the order of the superintendent denying the proposed increase. At the time this review suit was filed, the companies procured an ex parte order of the court purporting to authorize them to collect and impound the proposed increase pending the litigation. Pursuant to this ex parte order of the court, the companies have collected from the policyholders the proposed 16 2/3 per cent increase from June 1, 1930, to May 8, 1935. The amount so collected is now impounded in the registry of the circuit court.

When the review suit was filed in the circuit court, the case was sent to a referee with directions to take the testimony in the cause and report to the court his finding of facts and conclusions of law, together with the testimony taken. Thereafter, the referee filed his report with the court, to which both parties filed exceptions. Later, and on May 23, 1935, the court rendered the following judgment in the cause:

"Now at this day, this cause coming on to be heard, and all parties both plaintiffs and defendant being present by counsel in open court, the Court, being fully advised in the premises, doth consider and adjudge that the issues herein be found for the defendant and against the plaintiffs; that the plaintiffs' exceptions to the Referee's report heretofore filed herein be and the same are hereby overruled; that defendant's exceptions to the Referee's report be and they are hereby sustained; that the said Referee's report be set aside; that the plaintiffs' bill be and the same is hereby dismissed; that the injunction heretofore issued herein be and the same is hereby dissolved; and it is further considered, ordered and adjudged and decreed that the funds heretofore impounded herein be disbursed among the policyholders lawfully entitled thereto, subject to such other lawful claims and demands, if any, as may constitute a proper charge against said fund, under the orders and judgments of this Court. It is further ordered, adjudged and decreed that the costs of this proceeding be adjudged against the plaintiffs, and that the defendant have therefor execution."

After rendition of above judgment the companies appealed.

Our jurisdiction to hear and determine the cause has been challenged.

This is a joint action by seventy-four companies to review the order of the Superintendent of Insurance refusing to approve the proposed increase in rates. The companies seek to show by their aggregate experience that they are entitled to the proposed increase.

We first call attention to the provisions of the rating act. The statute provides that *each* company doing an insurance busi-

ness in this State shall maintain a public rating record. Section 5860, Revised Statutes 1929, which deals with that subject makes the following provision:

*"Every fire insurance company* or other *insurer* authorized to effect insurance against the risk of loss by fire, lightning, hail or windstorm shall maintain a public rating record from which the rate of premium applicable to each risk in this state to be written by *such company* or other *insurer* may be ascertained in advance of the making of the insurance thereon. . . ."* (Italics ours.)

We have italicized the portions of the above statute which clearly show that *each* company, independent of other companies, must maintain its own public rating record from which the rate of premium it expects to charge for insuring a particular risk may be readily determined. As evidence of the legislative intent that each company should, in the first instance, fix its own basic schedule of rates, it enacted a statute prohibiting concert of action by the companies on that subject. Section 5861 which deals with that question provides as follows:

"For this purpose *each company* or *other insurer* shall be permitted to maintain *its own* public rating record or to use a public rating record maintained by an actuarial bureau, provided such record shows the true and correct rate charged by *such company* or *insurer,* and provided further that *no company* or *other insurer* may directly or indirectly by any agreement, contract, understanding or otherwise agree with any other company, insurer, or actuarial bureau to continue to use the rating record, of any actuarial bureau or to refrain from maintaining *its own* rating record, or to maintain the rates fixed by any such actuarial bureau." (Italics ours.)

There is another provision of the rating act which shows that the law does not fix or maintain a uniform rate to be charged by all companies, but that each company, in the first instance, fixes its own basic schedule of rates, and must proceed individually to obtain an increase in *its* rates. The statute, Section 5864, reads as follows:

"All public rating records required to be maintained by this article whether kept by insurers separately or actuarial bureaus, shall show the rate which *such insurer* proposes to charge and collect, but *any insurer* maintaining *its own* public rating record, or any actuarial bureau shall be permitted to change or lower *its rate* or rates whenever *it* sees fit, provided that rates shall not be raised until at least ten days notice has been given by the *insurance company* to the superintendent of insurance and his approval obtained, but in making a change, *it* shall be required to make the change in writing on *its public record,* and to immediately give notice thereof to the superintendent of insurance. . . ." (Italics ours.)

The rating act does not deal with the companies jointly. It treats of them singly. It provides what *a company* must do if *it* desires to

raise *its own* rates. We have called attention to these statutory provisions in the rating act to show that the making of a rate, in the first instance, or the raising of a rate after it has once been established, is the concern of each individual company. Otherwise stated, whether or not a given company is entitled to a raise in rates, is no concern of any other company, but the question must be determined from the individual experience of the company asking the increase in rates. It is true that companies in the same territory usually charge the same rate, but that condition is not brought about by the law, but by the fact that a company in a given territory could not get business if it charged a higher rate than other companies in the same territory.

■ Plaintiffs' petition pleads a joint action based upon the aggregate experience of all the companies from 1924 to 1928, both inclusive. The companies call attention to the fact that their petition alleges that they bring the action jointly and severally, each for itself. This allegation in the petition is a mere conclusion. No facts are alleged in the petition which would characterize the suit as a several action by each of the companies. The petition does not allege the individual experience of either of the companies. Neither does it allege that the proposed uniform increase is based on the individual experience of each company, or that each company would be entitled thereto from a consideration of its own experience. On the contrary it alleges the combined or aggregate experience of all the companies and seeks to establish the companies' right to an increase in rates on that theory. Attention is also called to the fact that the petition alleges that each company had changed its public rating record, and each filed its separate experience with the Superintendent of Insurance. These facts only laid the foundation for individual suits by each of the companies. They did not see fit to bring separate actions, but on the contrary, united their forces and brought a joint action based on their combined or aggregate experience. They must stand or fall on the theory advanced in their petition. They cannot sue jointly and secure relief individually. The companies do not (and could not with any show of reason) seriously contend that this is a separate action by each of the companies. On the contrary, they assert their right to bring a joint action based upon the aggregate experience of all the companies, and concede that the case was tried below on that theory.

■ Contention is made that this joint action could amount to nothing more than a misjoinder of parties which was waived because not timely raised in the court below.

No one disputes the fact that misjoinder of parties may be waived. The question in this case goes deeper than mere misjoinder of parties. It goes to the right of the parties to maintain the action, and the power or jurisdiction of the court to grant any relief in such an

action. The statute does not provide a uniform rate for all the companies. Neither does it provide for or authorize a joint action based upon the aggregate experience of all the companies, to review an order of the superintendent refusing to approve a proposed increase in rates. The petition does not allege any joint interest or right in or to the business covered by the rates. Absent such a joint interest, a joint action cannot be maintained.

Assume that a majority of the companies involved are making an adequate return on the present rates, and that the minority is losing money. If the aggregate experience rule applies, the majority of the companies making an adequate profit on the present rates, might materially increase their present adequate rates by joining forces with the companies now losing money, and showing by their aggregate experience that the aggregate profit of all the companies was not sufficient to give them all a fair return. Such an unfair and unjust result furnishes a good reason why the Legislature has not authorized such an action. The Supreme Court of the United States in the case of Aetna Insurance Company et al. v. Hyde, 275 U. S. 440, holds that no insurance company operating in Missouri on an adequate rate is entitled to have higher rates because of the experience of competitor companies. In so holding that court said:

"No company receiving just compensation is entitled to have higher rates merely because of the plight of its less fortunate competitors. Companies whose constitutional rights are not infringed may not better their position by urging the cause of others. [Supervisors v. Stanley, 105 U. S. 305, 311; Heald v. District of Columbia, 259 U. S. 114, 123.] As a practical matter of business, it is impossible in the long run for some companies to collect higher premiums than those charged by others in the same territory. Rates sufficient to yield adequate returns to some may be confiscatory when applied to the business of others. But the latter have no constitutional right to prevent their enforcement against the former."

The cited case was a joint action based on the aggregate experience of the companies to review an order of the Superintendent of Insurance reducing rates ten per cent. The statute in force at that time, Sections 6283 and 6284, Revised Statutes 1919, authorized a review of an order reducing rates by a joint action of the companies based on their aggregate experience. No such provision was made for the review of an order refusing to approve a proposed increase in rates.

Counsel for the companies contend that the right of the companies to maintain a joint action based on aggregate experience to review an order refusing to approve a proposed increase in rates, was not an issue in the cited case and for that reason it furnishes no authority for holding the instant joint action cannot be maintained.

We agree with counsel that the only question decided by the Su-

preme Court of the United States in the cited case was that no Federal question was involved. But in deciding that question the court held that the companies could not, in a joint action, show by their aggregate experience that rates were so low as to be confiscatory, and therefore violative of the Fourteenth Amendment, because they had no ''joint interest or right in or to the business covered by the rates or the protection sought to be invoked.'' Note the language of the opinion on that subject:

''The complaint did not allege any facts to show that the reduced rates were confiscatory as to any company. The court was not called upon to determine whether the order would operate to deprive any company of its property without due process of law. It treated the suit as one to obtain the review provided for by Section 6284.

''The petitioners are competitors and each carries on business for itself. While they may by joint action pursue the remedy given by Section 6284, it does not follow that the Constitution safeguards aggregate profits sufficient to constitute just compensation for all the companies. The complaint fails to show any joint interest or right in or to the business covered by the rates or the protection sought to be invoked.''

In the case at bar the companies are trying to do the very thing the Supreme Court of the United States held in the cited case they could not do. The gist of the holding of the Supreme Court of the United States in the above case is that the companies could n' invoke the protection of the Fourteenth Amendment without showing confiscation, and that confiscation could not be shown in a joint action based on their aggregate experience, because they had no joint right or interest in or to the business covered by the rates. For the same reason the companies cannot invoke the protection of the State courts, in order to get an increase in rates, without showing that existing rates are confiscatory or are so low as not to afford a reasonable profit, and such facts cannot be shown in a joint action based on the aggregate experience of all the companies because they have no joint interest or right in or to the business covered by the rates.

Counsel contend that Section 5873 of the present 1929 statute authorizes a review of an order refusing to approve a proposed increase in rates, by a joint action based on the aggregate experience of the companies. This section provides:

''The superintendent of insurance, upon written complaint of any citizen, or upon his own motion, is hereby empowered to investigate the necessity of a reduction of rates. If, upon such investigation it appears that the rates charged in this state by stock fire insurance companies for the five years next preceding such investigation are producing a profit in excess of what is reasonable, he shall order such reduction of rates as will, in his opinion, produce a fair and reasonable profit only. . . .''

This statute refers solely to a reduction of rates. It has no application to a proposed increase in rates, nor to the character of a suit necessary to review an order refusing to approve a proposed increase in rates.

█ Finally counsel say that Section 5874, Revised Statutes 1929, specifically authorizes a joint review of an order refusing to approve a proposed increase in rates.

The statute does not support the contention made. The language of the statute is that "The orders and directions of the superintendent of insurance, together with his findings or determinations of facts upon which such orders or determinations are founded, *shall be reviewable by a proper action in the courts.*" (Italics ours.) The statute does not undertake to say what character of action would be a proper action. Necessarily then, that question must be governed by general law and procedure applicable to such a situation. It is elementary law that if the companies do not have any joint interest or right in or to the business covered by the rates, the law will not permit them to show that their aggregate collections are not sufficient to yield a fair return to all the companies, and by that method obtain a flat increase in rates applicable to all the companies, although many of them may not be entitled to any increase at all. The gist of the whole matter is that since the companies have no joint interest in the business covered by the rates, they cannot use their joint experience to obtain an increase in rates.

█ We are familiar with the rule that "If the court has jurisdiction over the subject-matter, it has the power to decide whether the petition does or does not state a cause of action, and the mere failure of a petition to state a cause of action, or the defective statement of a good cause of action in no way affects the jurisdiction of the court." [State ex rel. Leake et al. v. Harris, Circuit Judge, et al., 334 Mo. 713, 67 S. W. (2d) 981, 982.] But the question is, when does a court have jurisdiction of the subject-matter of an action?

In State ex rel. Utilities P. & L. Co. v. Ryan, 337 Mo. 1180, 1187, 88 S. W. (2d) 157, we said:

"The subject matter of an action has been defined to mean the nature of the cause of an action or the relief sought."

In Charles v. White, 214 Mo. 187, 208, 112 S. W. 545, the rule is stated thus:

"Accordingly, we think the trend of the courts of this country is to enlarge the definition of jurisdiction with the statement that it should, properly defined, include not only the power to hear and determine, 'but power to render the particular judgment in the particular case.'"

Again, in State ex rel. v. McQuillin, 256 Mo. 693, 705, 165 S. W. 713, we said:

"If in a proper case where the petition below was before us, we

152

had from an examination of it found no jurisdiction in the court *nisi* to hear and determine the course set out therein, and had found that no amendment could be made by which jurisdiction could be conferred; then we would not hesitate to make the preliminary writ herein permanent.''

A certain cause was pending in the Circuit Court of Henry County. The defendant in that action sought prohibition to prohibit the circuit court from further proceeding with said cause. The case is reported in State ex rel. Minn. Mut. Life Ins. Co. v. Denton, 229 Mo. 187, 200, 129 S. W. 709. This court en banc there said:

''The circuit court had no jurisdiction of the cause of action stated in the petition of Herman P. Faris v. The Minnesota Mutual Life Insurance Company, and no amendment of the petition could give the court jurisdiction of that cause; an amendment stating a cause of action within such jurisdiction would be an amendment stating a new or different cause of action. . . . The writ of prohibition is awarded as prayed.''

Boiled down, the rules above quoted may be stated thus: If a court has no authority to grant any relief under a pending petition, and the petition cannot be amended so as to authorize the granting of any relief, the court has no jurisdiction over the cause. Such is the situation in the case at bar. The circuit court had no power to grant the companies any relief in a joint action based on their aggregate experience, because they have no joint interest in the business covered by the rates. The petition could not be amended so as to ask separate relief for each company based on their individual experience, without stating a new and different cause of action. For this reason the circuit court had no jurisdiction of the cause, hence this court acquired none by the appeal.

Since the circuit court did not have jurisdiction of the subject matter of the action, all orders made and judgments rendered therein by said court are null and void and of no effect, except the judgment dismissing the cause and ordering the impounded funds returned to the policyholders.

This brings us to a consideration of the proposed settlement of the cause. It appears that on May 18, 1935, the parties to this action, that is, the Superintendent of Insurance on one side, and the insurance companies on the other, entered into a settlement agreement by the terms of which it was agreed, among other things, that Honorable R. E. O'Malley, superintendent of insurance, would set aside the order made by his predecessor in office on May 28, 1930, disapproving the proposed increase of 16 2/3 per cent and make a new order retrospective to June 1, 1930, approving four-fifths of such proposed increase and disapproving one-fifth thereof. The settlement agreement further provides that the fund derived from the collection of the proposed 16 2/3 per cent increase pending this litigation, and

now impounded in the registry of the circuit court, shall be divided among the parties on the same ratio, that is, one-fifth or 20 per cent to the policyholders and four-fifths or 80 per cent to the insurance companies. On January 9, 1937, the parties filed in this court a joint motion and stipulation for decree. Attached to the motion is a form of judgment which we are asked to approve and enter of record as the judgment of the court disposing of the cause. The proposed judgment approves the settlement agreement, divides the impounded fund as provided in said agreement, provides that this court shall take charge of the impounded fund and dispose of it in accordance with the terms of the settlement agreement and the proposed judgment. The motion and stipulation for judgment were taken with the case.

On December 30, 1929, the companies promulgated the proposed increase of 16 2/3 per cent, notified Joseph B. Thompson, then Superintendent of Insurance, of that fact and requested his approval. On May 28, 1930, he made an order refusing to approve the proposed increase. It is contended that the superintendent based his order on the aggregate experience of the companies, but did not pass upon each company's right to the proposed increase based upon its individual experience, and failed to consider the experience of the companies on the fire class and on the windstorm class separately.

In order to give the proposed settlement a semblance of legality, it is argued that the question of each company's right to the proposed increase based upon its individual experience in the fire class and in the windstorm class separately, was pending before the department undecided from December 30, 1929, until May 18, 1935, upon which latter date R. Emmet O'Malley, the present Superintendent of Insurance, took up the pending question and made an order approving four-fifths of the increase as to each company, and disapproving one-fifth thereof. This argument is based on a false premise. No such question was pending before the superintendent at the time he attempted to decide it. In fact no question concerning the proposed increase in rates was pending before him at that time or at any other time.

The argument made treats the question as though the companies on December 30, 1929, filed with the superintendent an application for increase in rates based on the individual experience of each company, as well as on the aggregate experience of all the companies. There is no such thing known to the law as an application for increase in rates. The rating act provides that each company promulgates the increase in rates by setting up the desired increase on its public rating record and requesting the Superintendent of Insurance to approve it.

In the instant case the companies, pursuant to the provisions of the rating act, set up the proposed increase on their public rating

154

record, notified Thompson, then Superintendent of Insurance, that they had done so, and requested his approval. The *only* question such procedure presented to the superintendent for decision was whether the proposed increase in rates should be approved. The law clothed him with jurisdiction to determine that question. The fact that the individual experience of each company as well as the combined experience of all the companies was tendered to the superintendent along with the notice of the proposed increase in rates, did not change the situation, and did not present two questions for decision. Such tender merely furnished the superintendent evidence which the companies thought he should consider in determining the one question pending before him, and that question was whether the proposed increase in rates should be approved or disapproved. That question was within the judgment and discretion of the Superintendent of Insurance. When he exercised that judgment and discretion by making an order refusing to approve the proposed increase, whether that order was based on the right or wrong theory, it nevertheless decided the only question pending before the then Superintendent of Insurance, and left nothing for his successor in office, O'Malley, to decide. If the superintendent, in reaching his conclusion, considered the aggregate experience of the companies, when he should have considered the individual experience of each company, or *vice versa,* that would be a mere error in the exercise of the jurisdiction with which the law clothed him to determine whether or not the proposed increase should be approved, the remedy for which would be a proper action in court to review the superintendent's order.

It appears clear to me that if an insurance company seeks an increase in rates and the Superintendent of Insurance makes an order refusing to approve the proposed increase, and the companies take no further action, the matter is at an end. That is exactly what happened in this case. While the companies attempted to bring a suit to review the superintendent's order, the court had no jurisdiction of the action they brought. An action of which a court does not have jurisdiction is no action at all. It is a mere nullity and must be so treated. We must, therefore, view the case as though the companies had brought no action to review the superintendent's order, and treat the matter as a closed incident. Had a proper review action been brought, the question of the validity of the superintendent's order denying the proposed increase would have been kept alive, and the question of increase or no increase in rates would then have been a proper subject of compromise and settlement. Since no proper action was brought to review the order denying the proposed increase, there was no pending issue for the court to decide or for the parties to compromise and settle. We say this for two reasons, (1) the former Superintendent of Insurance decided the only issue pending before him by making an order denying the proposed increase,

and (2) the purported review suit of which the court had no jurisdiction did not and could not preserve the question of the validity of that order as a pending issue.

Evidently the companies realized that the present Superintendent of Insurance could not make an order approving the proposed increase or any part of it, unless that issue was pending before him. In their search for a pending issue, they look back through the years and discover in the dusty archives, records which show that this question was pending before a former Superintendent of Insurance five years ago. They contend that the former superintendent decided that question on one theory, and they are now entitled to have the present superintendent decide it on the other theory. For reasons stated, there is no merit in this contention.

Since there was no issues concerning the proposed increase in rates pending either in court or before the Superintendent of Insurance on May 21, 1935, his order of that date by which he attempted to approve four-fifths of the proposed increase of 16 2/3 per cent, is null and void and of no effect because made without jurisdiction. The settlement which the parties ask this court to approve is likewise void because based on this void order. It follows that the joint motion of the parties requesting that the settlement be approved and that judgment be entered in accordance therewith should be and is denied.

We next take the question of title to the impounded fund. The companies collected from the policyholders the proposed increase of 16 2/3 per cent from June 1, 1930, to May 8, 1935. The amount so collected is impounded in the registry of the circuit court.

Section 5864, Revised Statutes 1929, provides that rates shall not be raised until at least ten days' notice has been given by the insurance company to the Superintendent of Insurance and his approval obtained. Notice was given in this case, and on May 28, 1930, the superintendent made an order refusing to approve the proposed increase. This order was binding on the companies and prevented them from raising rates unless they brought a proper action in a court of competent jurisdiction to review the order, and upon such review obtained a decree of said court adjudging them to be entitled to the proposed increase in rates. The companies did bring the instant action for that purpose. But for reasons heretofore given, which we will not repeat, the circuit court did not have jurisdiction of the cause, and, therefore, had no authority to review the superintendent's order, or grant the companies any relief from its operative effect. This situation left the order of the superintendent denying the proposed increase in full force and effect. The companies did not and cannot acquire title to any part of the proposed increase collected in violation of that order. The entire fund, subject to lawful claims against it, if any, belongs to the policyholders and should be returned to them.

Although the impounded fund was accumulated without authority of law, and in a cause of which the court did not have jurisdiction, yet, since the court has the fund in its custody, it is its duty to protect it and see that it reaches the rightful custodian thereof.

Our holding that the court below had no jurisdictions of the cause renders a discussion of other questions raised unnecessary.

The judgment below set aside the referee's report, dissolved the injunction theretofore issued in said cause, dismissed plaintiffs' bill and adjudged that the impounded funds be disbursed among the policyholders lawfully entitled thereto, subject to such lawful claims and demands, if any, as might be a lawful charge against such fund. Since the court below had no jurisdiction of the cause, its judgment undoing what it had theretofore done in said cause, then dismissing the cause and adjudging that the impounded fund be disbursed among the policyholders lawfully entitled thereto, reached the right result regardless of the reasons which prompted the court to so adjudge. For that reason the judgment should be and is affirmed, and cause remanded with directions to the trial court to immediately return said funds from the registry of the court to the Superintendent of Insurance, the lawful custodian thereof, for distribution by him to the policyholders. *Gantt* and *Douglas, JJ.*, concur; *Hays, C. J.*, concurs in result; *Tipton, Leedy* and *Ellison, JJ.*, dissent.