AMERICAN CONSTITUTION FIRE ASSURANCE COMPANY ET AL., Plaintiffs-Appellants, v. GEORGE A. S. ROBERTSON (substituted for R. E. O'Malley), Superintendent of the Insurance Department of the State, Defendant-Appellant, GUY M. SONE and T. S. MOSBY.— 120 S. W. (2d) 43.

Court en Banc, October 11, 1938.

*Robert J. Folonie, E. R. Morrison, Homer H. Berger, Ragland, Otto & Potter* and *Igoe, Carroll & Keefe* for plaintiffs-appellants.

*Roy McKittrick*, Attorney General, *Harry G. Waltner, Jr.*, and *Drake Watson*, Assistant Attorneys General, for defendant-appellant; *J. F. Allebach* and *Julian O'Malley* of counsel.

*Roy D. Williams* for Sone.

*T. S. Mosby pro se.*

ELLISON, J.—This is the same cause reported in 342 Mo. 139, 113 S. W. (2d) 795, but involves a different phase of the litigation. In 1929 seventy-four stock fire insurance companies doing business in this State promulgated an increase in rates of 16 2/3 per cent. The then Superintendent of the Insurance Department refused to approve it. In June, 1930, the companies brought a proceeding in the Cole County Circuit Court under Section 5874, Revised Statutes 1929 (Mo. Stat. Ann., p. 4482), to review the Superintendent's order denying the increase. During the pendency of the proceeding the companies collected the new rate but the disputed portion thereof was impounded awaiting the outcome of the suit, to go to the insurance companies if the rate increase should be approved and to be refunded to the policyholders if it should be denied. On May 23, 1935, the circuit court entered a final decree for the Superintendent and dismissing the companies' bill. The companies appealed to this court where the judgment of the trial court was affirmed.

That is the case reported in 342 Mo. 139, 113 S. W. (2d) 795, supra. It dealt with the merits of the cause. The instant appeals deal with certain orders made by the circuit court after the aforesaid final judgment had been entered, allowing payments out of the impounded fund to the circuit clerk, respondent Sone, and his attorney, respondent Mosby, as compensation for services rendered while the fund was in the registry of the court. The plaintiff insurance companies appeal from three of these orders. The defend-

ant Superintendent appeals from the same three orders and from three others. This makes six orders and nine appeals therefrom consolidated as one case here.

When the review suit was filed the circuit court ordered that the disputed or increased portion of the new rate be impounded in the hands of the Superintendent, evidently in the belief that said Section 5874 authorized such impoundment. For over two years and seven months this was done, but in August, 1932, this court held in State ex rel. North British & Mercantile Ins. Co., Ltd. v. Thompson, 330 Mo. 1146, 52 S. W. (2d) 472, that the statute authorized impoundage only of the disputed portion of a rate *decrease,* not of a rate increase. Thereafter, on January 21, 1933, the circuit court, following certain expressions in the concluding paragraph of the North British case, supra, made an order in the asserted exercise of its inherent power directing the Superintendent to pay the impounded fund into court by delivering it to the clerk, respondent Sone, the money to be deposited in four designated banks. He was not referred to as custodian in this order. Collection and impoundment of the rate increase was continued thereunder for nearly two years and a half more until this court stopped it by *quo warranto* and mandamus in State ex rel. McKittrick v. American Colony Ins. Co., 336 Mo. 406, 80 S. W. (2d) 876; State ex rel. Thompson v. Sevier, 336 Mo. 442, 20 S. W. (2d) 893. The total amount collected and impounded seems to have been $1,786,182.34.

The record powers of the circuit clerk, respondent Sone, with respect to the fund were not expressly enlarged beyond those conferred in said order of January 21, 1933, where he was designated merely as "circuit clerk," until over three years later in an order made on February 18, 1936. But in the meantime the record often referred to Sone as having a special status with relation to the fund, thus: as "the officer and agent of this court legally charged with the custody" of the fund; as "the Clerk of this Court, the present custodian of said fund;" and as "the clerk of this court and custodian of the fund impounded." By this designation, over a period of two years the court from time to time, without notice to appellants, directed Sone to make payments to himself and Mosby in part compensation for their services, as follows:

| SONE | | | MOSBY | | |
|---|---|---|---|---|---|
| September 25, | 1933, | $1500 | April 11, | 1933, | $1000 |
| November 23, | 1933, | 1500 | July 1, | 1933, | 1000 |
| February 13, | 1934, | 1000 | September 25, | 1933, | 1000 |
| May 18, | 1934, | 1000 | November 23, | 1933, | 2000 |
| January 3, | 1935, | 1000 | February 13, | 1934, | 1500 |
| March 13, | 1935, | 1500 | May 18, | 1934, | 1000 |
| | Total | $7500 | July 15, | 1934, | 1500 |
| | | | November 2, | 1934, | 1000 |

| | | |
|---|---|---:|
| December 12, | 1934, | 500 |
| January 11, | 1935, | 1000 |
| February 14, | 1935, | 1000 |
| March 13, | 1935, | 1500 |
| May 13, | 1935, | 1000 |
| | Total | $15,000 |

On May 24, 1935, the next day after the entry of final judgment, the court in similar orders directed Sone to pay himself $4000 to apply on his services as custodian of the fund, and $5000 to Mosby, his counsel. A month or so thereafter the Superintendent filed motions to require respondents Sone and Mosby to return to the impounded fund the payments made to them. While these motions were pending the court made another order similar to the above, on October 18, 1935, without notice to or appearance by counsel on either side, directing the clerk and custodian to pay Mosby $1000 to apply on his counsel fees. On December 14, 1935, the motions were overruled, but the court agreed that in the future the Superintendent would be notified as to further allowances of fees.

On February 18, 1936, over three years after the entry of the original impounding order of January 21, 1933, the court entered a long retroactive and prospective order, covering six pages in the printed abstract filed in this court. It included the following:

"NOW THEREFORE, in order to more fully perfect the record in this court and more clearly express the purpose and intention of the court in its order dated January 21, 1933, said Guy M. Sone is hereby formally named and designated as custodian of the impounded funds aforesaid, whether now on hand or hereafter received" (then stating his future duties, authorizing him to sign checks with the judge, and requiring him to give a $10,000 bond).

"The court further finds that each and every act done or to be done by the said Guy M. Sone, as aforesaid, has been and will be needful and necessary in the control, administration, handling and preservation of said fund so impounded with this court.

"The payments heretofore made out of the impounded fund aforesaid for the clerical help necessary in administering said fund and employment of help therefor is hereby approved, and said Guy M. Sone is hereby directed to continue the use and employment of such clerical force as may be necessary and directed by the court in the administration of said fund, and to pay for the services of such clerical force out of said impounded funds.

"The findings hereinbefore set out are based upon the records and files of this court, together with such knowledge as has come to the court in the control, management and directions concerning said impounded fund."

On the same day another order was made with respect to respond-

ent Mosby, as counsel for the custodian. It stated it was for the purpose of carrying into effect the order of January 21, 1933; referred in detail to Sone's duties as custodian; declared he was entitled to the advice of counsel with respect thereto; and found that Mosby had served him in that capacity from the beginning. The order then found the payments theretofore made to Mosby were lawful, that his services were necessary, and directed that he continue to serve as counsel to Sone. These two orders of February 18, 1936, are appealed from both by the plaintiff companies and by the defendant Insurance Superintendent.

About ten days later Sone and Mosby applied for orders allowing them further compensation for services theretofore rendered and thereafter to be rendered. Hearings on these applications were held on March 3, 1936, counsel for the plaintiff companies and the defendant Superintendent appearing specially. Later the same day, in response to the applications the court ordered $500 per month paid to Sone as custodian from the date of the original order of January 21, 1933; and $1000 per month to be paid to Mosby, as counsel, from the date of his appointment on February 11, 1933. This order was to continue in force until the final disposition of the case and the amounts already received by Sone and Mosby were to be credited thereon. Both the plaintiff companies and the defendant Superintendent appealed from the order. The next day, March 4, 1936, the court overruled the Superintendent's motions to vacate said two orders of February 18, 1936, attempting to validate retroactively Sone's appointment as custodian and Mosby's appointment as counsel, and also the order of March 3 allowing them $500 and $1000 per month, respectively, for their services. The Superintendent alone has appealed from these three orders.

There can be no doubt about the fact that caring for the impounded fund greatly added to the clerk's duties. There were 75 accounts with insurance companies and about 500,000 policyholders. A large amount of bookkeeping was necessary in recording the rate increase collections on these policies. When any policy was cancelled, on which the increased premium had been paid in advance, the unearned portion thereof had to be refunded to the issuing company. The four depository banks pledged securities to secure the funds deposited with them. These securities were withdrawn from time to time as they matured, or for other reasons, and others were substituted in their stead. The amount of securities handled by Sone and Mosby in this manner aggregated nearly $3,500,000. However the amount on hand at any given time only equaled the amount of funds on deposit at that time. All this work was done with the help of five employees in Sone's office.

The brief of the appellant insurance companies makes six assignments of error; that of the Attorney General, for the Superintendent

of the Insurance Department, contains fourteen assignments of error. These may be summarized as follows: (1) the trial court had no jurisdiction to enter the two retroactive orders of February 18, 1936, appointing Sone as custodian and Mosby as counsel, and the order of March 3, 1936, allowing past and future fees to them, (a) because they were made at a term subsequent to that during which final judgment was rendered, (b) and at a term subsequent to the one when an appeal was taken from that judgment; (2) the trial court erred in making said three orders because, (a) the facts did not authorize said appointments and fee allowances, (b) Sone was not entitled to compensation other than his statutory fees as circuit clerk, (c) there was no need or warrant for the appointment of Mosby as counsel for Sone, (d) the orders were made after final judgment without proper notice to the litigants, (e) the fee allowances were grossly excessive showing bias and prejudice; (3) for the foregoing reasons, the court erred in overruling the Superintendent's motions to vacate said three orders.

The respondents Sone and Mosby argue that their respective appointments as custodian and counsel and the allowance of compensation for their services, were necessary to keep the fund intact and to keep it from being dissipated. They assert that the North British case and the American Colony case both recognized the circuit court was authorized to protect the impounded fund as long as the same remained in its possession. And finally, they insist that Sone's services as custodian were not germane to his duties as circuit clerk, and that the trial court legally could compensate him therefore and provide counsel who should be paid out of the impounded fund. On this point they cite a number of cases.

Aside from procedural errors, the appellants contend Sone *as circuit clerk* was bound by statute to receive and keep the impounded funds upon order of the trial court without extra compensation. They stress Section 11676, Revised Statutes 1929 (Mo. Stat. Ann., p. 1803), which provides that "every clerk shall . . . keep a perfect account of all moneys coming into his hands on account of costs or *otherwise,* and punctually pay over the same;" and assert the word otherwise, which we have italicized, means *any* money coming into his hands by order of court. Section 1840, Revised Statutes 1929 (Mo. Stat. Ann., p. 2563), makes it "the special duty of every judge of a court of record to examine into and superintend the manner in which the rolls and records of the court are made up and kept." Appellants' theory is that under this section it was the duty of the *court* to supervise the keeping of the records of the impounded fund, and that the employment of respondent Mosby as counsel for that purpose was illegal. Reference is made also to Section 11202, Revised Statutes 1929 (Mo. Stat. Ann., p. 6143), providing that "any person elected or appointed to any county . . . office in this

state, . . . who shall fail personally to devote his time to the performance of the duties of such office . . . shall thereby forfeit his office.'' Appellants contend this section and public policy required Sone to devote his full time to the duties of his office as circuit clerk; and forbade his appointment to a separate position as custodian of the impounded fund. In short, appellants maintain that the services rendered by Sone with respect to the impounded fund were incident to his office as circuit clerk, and that he was entitled only to the statutory fees allowed him as such officer. They cite many cases in support of these contentions.

We have stated the facts and issues as the case is presented by the parties, but cannot pass on any of these questions. On the appeal on the merits in this cause, American Constitution Fire Ins. Co. v. O'Malley, supra, 342 Mo. 139, 113 S. W. (2d) 795, 802, 805, decided early this year, the opinion declared that ''since the circuit court did not have jurisdiction of the subject matter of the action, all orders made and judgments rendered therein by said court are null and void and of no effect, except the judgment dismissing the cause and ordering the impounded fund returned to the policyholders;'' and further ordered the impounded fund returned to the Superintendent of the Insurance Department. Last April that case was followed in reasoning and result by a majority of the court in State ex rel. Robertson v. Sevier, 342 Mo. 346, 115 S. W. (2d) 810. This settles the question that the circuit court had no jurisdiction to make the allowances in controversy and no jurisdiction of the impounded fund except to turn it over to the Superintendent of the Insurance Department for distribution to the policyholders. Respondents contentions on the merits therefore have become moot. The briefs on both sides were prepared before these cases were decided.

For these reasons the orders and decrees appealed from are reversed. All concur.