HARRY SMITH, RESPONDENT, v. CITIZENS BANK OF GERALD, APPELLANT.—106 S. W. (2d) 45.

St. Louis Court of Appeals. Opinion filed June 1, 1937.

*James Booth* for respondent.

*Joseph T. Tate* for appellant.

908.

McCULLEN, J.—This action in equity was brought by respondent, plaintiff below, against appellant, defendant below, on a petition containing two counts. In the first count plaintiff prayed to have the court take an accounting between himself and defendant, and also prayed to have a certificate of deposit in the sum of $600, which had been issued by defendant to plaintiff, set-off against plaintiff's note for $600 due defendant. In the second count of his petition plaintiff sought to recover a money judgment against the defendant on the same certificate of deposit. The action was originally commenced in the Circuit Court of Franklin County, but on application of defendant it was taken on a change of venue to the Circuit Court of Washington County where it was tried. After hearing all the testimony offered by the parties and having taken the case under advisement, the court rendered judgment in favor of plaintiff, allowed the full amount of his certificate of deposit with interest thereon, making a total of $612 to be set-off against the sum of $661.44 found by the court to be owing by plaintiff to defendant on plaintiff's note, and ordered that defendant recover from plaintiff the net balance due and owing by plaintiff to defendant on said note in the sum og $49.44, and denied defendant its interest on said note from the 20th of April, 1934, up to the date of judgment, and also denied defendant a ten per cent attorney's fee provided for in said note if collected by an attorney. After an unavailing motion for a new trial, defendant brings the case to this court by appeal.

No issue is presented in this court as to the sufficiency of the pleadings and there is no dispute as to the material facts in the case.

In its answer the defendant admitted the execution and existence of the note and of the certificate of deposit referred to in plaintiff's petition, and then specifically alleged that on or about March 11, 1933, under Acts of the Legislature of Missouri, Laws of Missouri, 1933, page 402, and Laws of Missouri, 1933, page 404, the State Finance Commissioner of Missouri took charge of defendant bank and thereafter made a careful audit and inventory of the assets and liabilities of the bank to determine if it should be permitted to continue in business; that thereafter said State Finance Commissioner approved a contract and plan whereby the bank was permitted to reorganize and to receive deposits, pay checks and continue to do a banking business, which said contract and plan had, prior to said approval, been entered into between said bank and its depositors owning or controlling eighty-five per cent or more of the deposits therein which were not preferred claims, special deposits or deposits secured by bonds or collateral, and that by virtue of said contract and plan plaintiff and all other like creditors and depositors became bound by such contract and plan to the same extent and with the same effect as if they had joined in the execution thereof, and that plaintiff's claim must be treated in all respects as if he had joined in the execution of said contract and plan; that under the terms and conditions of said contract and plan defendant could pay only sixty-five per cent of plaintiff's deposit to him and issue a participating certificate for the remaining thirty-five per cent of plaintiff's deposit, and that ever since March 19, 1934, the date that defendant bank was permitted by the State Finance Commissioner to reopen and continue business, it had been able, ready and willing to comply with said contract and plan and offered to pay plaintiff sixty-five per cent of his deposit in said bank, amounting to $390, and deliver to him a participating certificate for the remaining thirty-five per cent of his deposit. Defendant further alleged that prior to the date of the closing of said bank and its reorganization, defendant had requested plaintiff to offset his deposit against said note but that plaintiff had refused to do so and demanded a renewal of his certificate of deposit in defendant bank. Defendant concluded its answer by praying judgment against plaintiff for the sum of $736.91 less $390 credit due plaintiff.

In his reply to defendant's answer, plaintiff denied each and every allegation contained therein and for further reply alleged that at the time of the commencement of this action defendant was unable and is still unable to pay its debts and demands against it in the ordinary course of business.

It appears from the evidence that sometime prior to March, 1930, plaintiff, along with his father and brother, borrowed $600 from the defendant bank and gave the bank their demand note for the same. In March, 1930, plaintiff deposited in the bank $600, for

which he received a certificate of deposit for that sum payable six months thereafter. The note was renewed a number of times thereafter as was also the certificate of deposit. The last renewal of the note was made on September 17, 1932. The note was signed by plaintiff and his father and brother and provided for interest from date at the rate of six per cent per annum and eight per cent per annum after maturity until paid, with interest payable annually, defaulting interest to bear the same rate of interest as principal. It also provided that the makers, sureties, endorsers and guarantors thereon waived demand, presentment for payment, notice of nonpayment, protest, notice of protest, that time of payment may be extended without notice, and that in·case payment should not be made at maturity and the note should be placed in the hands of an attorney for collection, the makers should pay the cost of collecting, including an attorney's fee of ten per cent of the principal and interest remaining unpaid, and waived all exemptions and homestead laws.

About October 13, 1932, plaintiff went to the bank where he presented the certificate of deposit for $600 to Mr. T. H. Vossbrink, cashier of the bank, and requested him to pay plaintiff the money thereon. The bank was then open and doing business.in the usual manner. The cashier told plaintiff that he could get his money on the certificate of deposit but that he would have to use it to pay off his note which the bank then held against him and which was due. Plaintiff refused to take the money on the certificate of deposit and pay off his note therewith and told the cashier ''that he did not want to do that because he wanted his father and brother to pay the note.'' He demanded that the bank renew his certificate of deposit, whereupon a new certificate of deposit, dated as of October 3, 1932, was issued to him by the bank. The certificate was payable ·to the order of plaintiff six months after date with interest at the rate of four per cent per annum, no interest after maturity.

On cross-examination plaintiff testified that the cashier told him that if he got his money on the certificate of deposit he would have to pay off the note with it at that time. In this connection plaintiff further testified on cross-examination:

''Q. He didn't refuse to let you have your money? A. No, sir, he didn't.

''Q. Why didn't you take your money and pay the note off at that time? A. I thought maybe my father would pay it.''

Plaintiff again called at the bank in April, 1934, after the bank had ceased business under the moratorium declared by the President of the United States and had been taken over by the Commissioner of Finance of the State of Missouri for the purpose of reorganization. The bank had reopened for business under the agreement and plan entered into by the bank and nearly all of its depositors pursuant

to the Act of the Legislature, Laws of Missouri, 1933, page 404. At that time, April, 1934, the cashier of the bank refused to pay plaintiff the amount of his deposit and told plaintiff that he couldn't give him any money on the deposit because the bank was under contract to pay only sixty-five per cent of deposits. The cashier also told plaintiff at that time that the bank had reorganized under an agreement with ninety-eight per cent of the depositors who had waived payment of thirty-five per cent of their deposits, and that the agreement had been approved by the Banking Department of the State.

It is not disputed that the contract between the depositors and the bank was signed by depositors who represented slightly more than ninety-eight per cent of the deposits in the bank, and that plaintiff refused to sign said agreement and refused to join in the reorganization plan with the other depositors.

Defendant contends that even though plaintiff did not sign the contract entered into between the defendant and the other depositors under the reorganization plan which was approved by the State Finance Commissioner, he is nevertheless bound by such contract and that his claim should be treated in all respects as if he had joined in the execution of said contract.

Plaintiff contends that the Acts of the Legislature referred to do not constitute a defense to any of the matters pleaded in plaintiff's petition and that plaintiff's right of setoff is not limited or controlled in any way by the provisions of said Acts of the Legislature.

The Act of the Legislature relied on by defendant herein, Laws of Missouri, 1933, page 404, consists of six sections. Section 1 provides that whenever unusual withdrawals from any bank or trust company are being made, or whenever in the judgment of the president and cashier, or president and secretary of such bank or trust company, or the board of directors, unusual withdrawals are about to be made, such officers are authorized to suspend payment of checks of depositors and any and all other withdrawals of assets of such bank or trust company for a period of six banking days.

Section 2 of said Act provides that upon the suspension of payment of checks and withdrawal of assets it shall be the duty of the president, cashier or chairman of the board of directors of the bank or trust company to notify the State Finance Commissioner immediately and upon receipt of that notice it shall be the duty of the State Finance Commissioner to take charge of said bank or trust company and to supervise the receipt of deposits and payment of checks and withdrawal of assets during a period of sixty days next following taking charge thereof.

Section 3 of said Act provides that, during said sixty day period, the State Finance Commissioner shall make a careful audit and inventory of the assets and liabilities of said bank or trust company to determine if said bank or trust company shall be permitted to con-

tinue in business, and when the State Finance Commissioner shall approve a contract or plan whereby such bank or trust company is permitted to receive deposits, pay checks and continue to do a banking business or reorganize, entered into between the depositors of such institution owning or controlling eighty-five per cent or more of the deposits therein which are not preferred claims, special deposits or deposits secured by bonds or collateral, on the one hand, and the bank or trust company or its board of directors on the other, then and in that event all other depositers and creditors shall be bound by such contract or plan to the same extent and with the same effect as if they had joined in the execution of said contract or plan in event that said bank is permitted to reopen for business as limited by said contract or plan, provided that all depositors and creditors of the same class shall be treated alike.

Section 4 of said Act provides when the State Finance Commissioner shall proceed to the liquidation of such bank or trust company.

Section 5 provides that certain deposits made thereafter shall be special deposits.

Section 5A provides what banks and trust companies shall come under the provisions of the Act.

Section 6 of the Act is an emergency clause providing that the Act shall take effect to be in force from and after its passage and approval by the Governor. It was approved February 22, 1933.

Under the agreement and plan between the bank and the other depositors, the directors of the bank were authorized to cause to be issued in the names of the depositors participation certificates in the amount of thirty-five per cent of their deposits, and providing therein that such participation certificate should have no value until such time as the assets removed or taken from the bank should be paid or liquidated, and that each depositor signing should receive his *pro rata* of the funds so held by the board of directors of the bank. The agreement and plan provided for the remainder, or sixty-five per cent, of the deposits to be subject to checks or withdrawal in sums of five per cent thereof after the date of the reopening of the bank, and five per cent thereof at the end of three, six and nine months respectively following the date of such reopening, and at the end of twelve months after such reopening the entire remaining amount to be subject to check on demand. Each participating certificate issued by the bank certified that the depositor named therein, having for consideration waived his right, interest and title to thirty-five per cent of his total deposits, amounting to a sum specified therein, ''is by virtue of said waiver entitled to participate in the funds realized from the assets taken out by this waiver not exceeding the amount of $———— as and when, in full or by installments the board of directors of the bank or trustees named for that purpose order a distribu-

tion of said fund and until said assets removed under the said waiver have been liquidated.''

No question as to the constitutionality of the Acts of 1933 of the Legislature pleaded by defendant herein was raised at any time in this cause by plaintiff. An objection to the validity of a statute based upon constitutional grounds is waived by failure to present it. [Schildnecht et al. v. City of Joplin, 327 Mo. 126, 35 S. W. (2d) 35.] If any such constitutional question had been raised and kept alive in the cause this court, of course, would have no jurisdiction to pass upon its because such a question would be for our Supreme Court to determine. Statutes are assumed to be valid until someone injuriously affected complains. [Kingshighway Presbyterian Church v. Sun Realty Company, 324 Mo. 510, 24 S. W. (2d) 108; State ex rel. Equality Savings & Building Ass'n v. Brown, 334 Mo. 781, 68 S. W. (2d) 55.] We must, therefore, treat the provisions of the Act of 1933 of the Legislature as valid and binding laws of the State of Missouri.

It is not disputed that in making the agreement and carrying out the plan provided for therein the defendant bank proceeded strictly in accordance with the provisions of the Legislative Act referred to. We are, therefore, unable to see how the bank, after it had reopened for business on March 19, 1934, under the plan and agreement approved by the State Finance Commissioner, could have lawfully allowed plaintiff, as one of its depositors, directly or as a setoff against his note, more than sixty-five per cent of his deposit in view of the positive mandate of Section 3 of such Legislative Act. It is true plaintiff did not enter into the agreement and plan of the bank and its depositors, but it will be noted that Section 3 of the Act specifically provides that when the State Finance Commissioner shall approve a contract or plan entered into between a bank and its depositors owning or controlling eighty-five per cent or more of the deposits, ''then and in that event all other depositors and creditors shall be held to be bound by such contract or plan to the same extent and with the same effect as if they had joined in the execution thereof, and their claims shall be treated in all respects as if they had joined in the execution of said contract or plan, in event said bank be permitted to reopen for business as limited by said contract or plan.''

In Sturdivant Bank v. Stoddard County, 332 Mo. 568, 58 S. W. (2d) 702, it was held that although the right to a set-off at law is statutory, equity courts have long granted similar relief and that the insolvency of a party against whom a set-off is claimed may be sufficient in equity to justify a set-off. However, it was also held in that case that equity generally follows the law as regards set-off unless injustice would result from such a course, and that if a statute prohibits a defendant's payment of plaintiff's demand from what

is tendered as a set-off, the parties are not mutually indebted within the statute allowing set-off.

Under the positive, clear and unambiguous language of the Act passed by the Legislature during the extraordinary and widespread financial distress which prevailed in the early months of 1933, it became obligatory upon the defendant to treat plaintiff's deposit exactly the same as it was required to treat the deposits of other depositors after the agreement between the other depositors and the bank was put in operation with the approval of the State Finance Commissioner. The purpose of the legislative act was to aid in avoiding, wherever possible, financial disaster and ruin for banks and depositors alike. When we consider that depositors representing ninety-eight per cent of the deposits joined in the execution of the agreement and plan to place all depositors in the same class on an equal basis whereby the bank was saved from liquidation and resultant loss and was opened as a going institution, we do not believe it would be doing equity to require the bank to allow plaintiff to set off the full amount of his certificate of deposit against his note and thus give plaintiff a preference over all other depositors whose equities with respect to their deposits, in the absence of anything appearing to the contrary, may be assumed to be equal to those of plaintiff.

It will be recalled that in October, 1932, before the bank was closed and while it was still doing business in the usual way, the cashier of the bank offered to set-off the amount of plaintiff's certificate of deposit against his note but plaintiff refused to accept the offer, giving as his reason that he wished to have the bank collect the amount of the note from his father and brother. Plaintiff thus had an opportunity to save himself from financial loss only a few months before the bank was closed early in 1933 but refused to do so and himself chose a course whereby he took the risk of becoming involved in the very situation which ensued.

In Phoenix Trust Co. v. Holt, 312 Mo. 563, 279 S. W. 714, it was held that where there is a safe way open to a party to protect himself from financial loss at a normal expense and he speculates unsuccessfully on a line of action that leads to financial disaster, he cannot call on a court of equity for relief. While, of course, plaintiff did not and could not know what the future held in store for him at that time, he nevertheless declined the bank's offer when the bank was free to give him the benefit of the full amount of his certificate of deposit and he should not be heard to complain because the bank later on, under the law and under its agreement with ninety-eight per cent of its other depositors, was not free to allow him the full amount thereof as a set-off against his note. We think the principle announced in the Phoenix Trust Company case, *supra,* is applicable to the facts in the case at bar. If the bank and the other depositors had not taken the steps which they did take under the

laws enacted by the Legislature, the bank most likely could not have been saved at all. It does not seem to us to be in accordance with the principles of equity that the other depositors and the bank, whose actions saved the bank from probable ruin, should be penalized while plaintiff, who refused to join in the efforts to save the bank, should be rewarded by allowing him what would amount to a preference over such other depositors.

On the whole record, plaintiff is entitled to a judgment for sixty-five per cent of the amount of his certificate of deposit, with interest thereon at four per cent as provided therein, as a set-off against the face amount of the promissory demand note executed by plaintiff and his father and brother, with interest thereon at six per cent, as provided therein, up to August 29, 1935, the date of the judgment from which this appeal was taken, and defendant is entitled to a judgment in its favor against plaintiff for the difference between the amount of said set-off for plaintiff and the face amount of said promissory demand note, with interest as aforesaid. Plaintiff is also entitled to receive from defendant a participating certificate for the remaining thirty-five per cent of his deposit in accordance with the agreement between the bank and its other depositors. Under the evidence, defendant is not entitled to the ten per cent attorney's fee provided for in said note bcause there is no evidence to show that said note was placed in the hands of an attorney for collection. Defendant took no steps to collect on the note until after plaintiff had made demand on defendant to have defendant pay said note by setting off the amount of his certificate of deposit against it. It must be remembered that this suit was not brought by defendant to collect on the note. It was brought by plaintiff to have the note paid by set-off. The note was, therefore, not put in the hands of an attorney by defendant for collection in the manner contemplated by the parties as evidenced by its terms.

That part of the judgment of the circuit court dismissing the second count of plaintiff's petition is affirmed, but the judgment as to the first count is reversed and the cause is remanded to the circuit court with directions to enter judgment in accordance with the views herein expressed. *Hostetter, P. J.,* and *Becker, J.,* concur.