STATE OF MISSOURI at the relation of RAY B. LUCAS, Superintendent of the Insurance Department of the State, Relator, v. SAM C. BLAIR, Successor in office to NIKE G. SEVIER, Judge of the Circuit Court of Cole County.—144 S. W. (2d) 106.

Court en Banc, November 9, 1940.

*Roy McKittrick,* Attorney General, *Covell R. Hewitt* and *Harry H. Kay,* Assistant Attorneys General, for relator; *Charles L. Henson* of counsel.

*John T. Barker* and *Glenn C. Weatherby* for respondent.

1020

*Justin D. Bowersock, Robert B. Fizzell* and *John F. Rhodes, amici curiae, pro se.*

CLARK, J.—Prohibition to prevent respondent, circuit judge of Cole County, from proceeding to hear and determine the case of Glenn C. Weatherby v. Lucas et al., now pending in said circuit court. In that case the plaintiff, Weatherby, has sued eight named insurance policyholders and Ray B. Lucas, Superintendent of the Insurance Department of Missouri, asking the court to allow plaintiff an attorney fee and impress the same as a lien on the fund now in the hands of said superintendent as a result of certain litigation, commonly known as the 16⅔ per cent rate cases.

The return of respondent to our preliminary writ presents legal questions only. Briefly stated, the undisputed facts are as follows: on December 30, 1929, all stock fire insurance companies doing business in Missouri set up on their books an increase in rates of 16⅔ per cent, notified the then superintendent, Thompson, and asked his approval; on May 28, 1930, the superintendent refused to approve the increase; on June 5, 1930, a large number of the companies brought a joint action in the Circuit Court of Cole County to review the order of the superintendent refusing approval of the increase; at the same time the review suit was filed the companies procured an

*ex parte* order authorizing them to collect such increased rates and impound the increase with the superintendent to await the outcome of the action; such increase was collected and impounded from June 1, 1930, to May 1, 1935; in obedience to an order of said circuit court made on January 21, 1933, the superintendent paid the impounded fund into the registry of said court; later, in obedience to the mandate of this court in the case of American Constitution Fire Assurance Co. v. O'Malley, 342 Mo. 139, 113 S. W. (2d) 795, the fund, amounting to something more than $1,650,000, was returned to the superintendent for distribution among the policyholders. On December 1, 1930, the then superintendent, Thompson, with the approval of the Governor, employed Weatherby as an associate counsel in the rate litigation; Weatherby continued to act as one of the attorneys in such litigation until some time in April, 1936.

The contentions of plaintiff, Weatherby, in his petition in the circuit court, and the respondent in his return to our preliminary writ in this court, may be summarized as follows: The accumulation of the fund was not authorized by the Insurance Code and the right to an attorney's lien is not governed by that code; the respondent judge has inherent jurisdiction in equity to determine whether such a lien shall be impressed on the fund; the Insurance Code does not prohibit the payment of attorney fees from the fund; the fund was recovered, through the efforts of Weatherby and other attorneys; for the benefit of thousands of private persons who are the only persons primarily interested, the superintendent being a mere stakeholder; *if* the statutes which constitute the Insurance Code deny to respondent judge his inherent power in equity to hear and determine the case, they violate certain provisions of the State and Federal Constitutions.

The relator contends: the whole business of insurance is regulated by the Insurance Code; plaintiff Weatherby was employed by virtue of the Code and must be paid as provided by it; the Code requires the superintendent to return the funds to the policyholders and the respondent is without jurisdiction to interfere with the superintendent in the handling of the fund.

This court has been called upon to view this rate litigation from many angles in numerous cases which have reached us. It seems to the writer that every legal question now raised by the parties herein has been decided by us in one or more of those cases.

In State ex rel. Carwood Realty Co. v. Dinwiddie, 343 Mo. 592, 122 S. W. (2d) 912, we prohibited the Circuit Court of Boone County from acting upon a petition of the Superintendent of Insurance asking for directions in administering this same fund. We approved the holding in the case of State ex rel. Missouri State Life Ins. Co. v. Hall, 330 Mo. 1107, 52 S. W. (2d) 174, to the effect that the Insurance Code is complete in itself and courts are without authority to interfere with its administration by the superintendent. We further said:

1022

"Section 5874, Revised Statutes 1929, dealing with funds created during the pendency of a rate litigation, among other things, directs the Superintendent of Insurance that 'in the event his orders and directions shall be sustained, then such funds shall be turned over to the policyholders *pro rata*.'

"Section 5670, Revised Statutes 1929, provides that the Insurance Department is charged with the execution of the insurance laws. A comprehensive method is provided to defray the expenses of enforcing the insurance laws. [Secs. 5679, 5686 and 5688, R. S. 1929.] Although these funds were illegally collected, nevertheless, they were accumulated while the Superintendent of Insurance was resisting a rate increase. In other words, while he was enforcing the insurance laws of this State, the funds were created. Therefore, the expense of distributing these funds should be paid as any other clerical expense of the department, and not paid out of the funds in question. Each policyholder is entitled to his *pro rata* share of these funds.

"The petition in question also asks the court to determine if certain lawyers have a lien on these funds for services rendered the superintendent in resisting the rate increase. Section 5678, Revised Statutes 1929, provides that the superintendent may, with the approval of the Governor, employ counsel for the purpose of enforcing the insurance laws, except in criminal prosecutions, but he is not given authority to pay counsel out of any funds belonging to the policyholders. He must pay counsel in the same way as any other expense of the Insurance Department is paid. [Aetna Insurance Co. v. O'Malley, Nos. 35568 and 35569, 343 Mo. 1232, 124 S. W. (2d) 1164.]"

Aetna Ins. Co. v. O'Malley, 343 Mo. 1232, 124 S. W. (2d) 1164, came to us on appeal from the Cole County Circuit Court and involved the allowance of attorney fees to said Weatherby and other attorneys in the 10 per cent insurance rate reduction cases. The Superintendent of Insurance had made an order for a reduction of ten per cent in insurance rates, which the companies resisted in court for a period of years during which they collected the old rate. The superintendent, with the approval of the Governor, employed said Weatherby and other attorneys and agreed to pay them out of the fund, if any, to be collected from the companies. After final recovery of the fund, the trial court made an allowance to the attorneys. We held that the superintendent, with the approval of the Governor, had statutory power to employ attorneys, but did not have the power to contract that they should be paid out of the fund to be collected. In that case the respondents contended, as they do in the instant case, that as the fund was recovered through their efforts for the benefit of the policyholders, the court had inherent power in equity to impress a lien upon the fund for the attorney fees. In support of that contention they cited a large number of cases which are cited

on the same point in the instant case. In that case we answered this contention by saying: "However, we do not believe these cases are in point for the reason that the above equitable principles have been superseded by the Insurance Code of this State."

Respondent criticizes our holdings in the above cases on various grounds and further says that those cases do not apply to the instant case because this is a "class" suit against the policyholders in which the superintendent is made defendant as a mere stakeholder.

Respondent says that the fund was illegally accumulated. We have so held. [State ex rel. North British & Merc. Co. v. Thompson, 330 Mo. 1146, 52 S. W. (2d) 472; State ex inf. McKittrick v. American Colony Ins. Co., 336 Mo. 406, 80 S. W. (2d) 876; State ex rel. Robertson v. Sevier, 342 Mo. 346, 115 S. W. (2d) 810; American Const. Fire Assur. Co. v. O'Malley, 342 Mo. 139, 113 S. W. (2d) 795.] But in the same cases we also held that, although the fund was illegally accumulated, it was recovered by the superintendent by virtue of his office while enforcing the insurance laws and that the superintendent is the legal custodian of the fund.

Respondent says that, although Section 5678, Revised Statutes Missouri 1929, Mo. Stat. Ann., p. 4344, confers upon the superintendent the right to employ special attorneys, he also has the inherent right to do so by virtue of his office without express statutory authority. Further, respondent says that the Insurance Code does not prohibit such attorneys from being paid out of the fund recovered; that Section 5679, Revised Statutes Missouri 1929, Mo. Stat. Ann., p. 4344, requires only "current" expenses to be paid out of appropriations from fees earned by the department; and also that the instant case comes within the exception contained in said section referring to "proceedings against any company." Most, if not all, of these contentions have been decided contrary to respondent's claims in the cases above cited, particularly State ex rel. v. Dinwiddie, and Aetna Ins. Co. v. O'Malley. It is unnecessary for us to decide whether the superintendent would have inherent power to employ attorneys, in the absence of a statute. The General Assembly has not left the matter there. It has conferred the power upon him by express statutory enactment, and, in so doing, has defined the manner in which he may exercise the power, to-wit, with the approval of the Governor. In the face of that statute, the superintendent no longer has inherent power to employ attorneys. To hold otherwise would be to say that he could ignore the statute and employ attorneys *without the approval of the Governor*. The plaintiff Weatherby was employed by virtue of the statute to assist in enforcing the insurance laws of the State. The General Assembly, by Section 5679, also has provided the methods by which *all* the expenses of the Insurance Department must be paid. We cannot read into that section any distinction between "current" expenses and "emergency" expenses; nor can we

find where attorney's fees are excepted. The section provides two methods only for the payment of expenses: out of appropriations from earned fees, or by assessment against the companies. The reference in this section to "proceedings against any company," etc., becomes clear when read in connection with Section 5685, Revised Statutes Missouri 1929, Mo. Stat. Ann., p. 4348, which specifically provides the method for paying such expenses. The plaintiff Weatherby is not seeking payment by either method provided by the statutes.

But respondent says this case differs from all the insurance rate cases previously decided by this court because: this is a "class" suit against some policyholders as the representatives of all the policyholders; that the policyholders are the only persons beneficially interested in the fund; that the superintendent is merely a stakeholder; and that in equity the attorneys should be paid from the fund. The trouble with these contentions is that the superintendent is more than a mere stakeholder. As previously held, the superintendent is the statutory custodian of the fund. True, he represents the policyholders, but he represents them by virtue of his office and under the limitations imposed upon him by statute. He also represents the State in the enforcement of its insurance laws. [State ex rel. Missouri State Life Ins. Co. v. Hall, supra.] The superintendent employed the plaintiff Weatherby to represent the policyholders, but also to represent the State; to recover excessive premiums illegally exacted from policyholders, but also to prevent the exaction of excessive premiums from our citizens in the future.

The attorney was not employed by the policyholders. He was employed by the superintendent under his statutory powers, which statutes, including the method of payment, became a part of the contract of employment. [Aetna Ins. Co. v. O'Malley, 343 Mo. 1. c. 1239, 124 S. W. (2d) 1164.] If this suit is maintainable at all, the superintendent is not only a proper defendant, he is a necessary defendant.

Respondent says that if the statutes which constitute the Insurance Code deny to the circuit court its inherent power as a court of equity to hear and determine plaintiff's claim for lien, or if said statutes deny to counsel the right to contract with the superintendent to be paid from the fund, they violate certain specified sections of the State and Federal Constitutions. The regulation of the insurance business properly comes within the police power of the State. [State ex rel. Ins. Co. v. Hall, supra; Orthwein v. Ins. Co., 261 Mo. 650, 1. c. 655, 170 S. W. 885.] Statutes defining and limiting the powers of the superintendent in the transactions of public business do not unconstitutionally impair his freedom of contract nor the freedom of those who contract with him. Nor does our construction of the statutes deny to the circuit court, as a court of equity, any inherent power to impress a lien on the fund, because,

under the facts, no lien exists. Courts of equity, as well as courts of law, are bound by the statutory limitations placed upon the power of the superintendent in making contracts to enforce the insurance laws.

Respondent argues that this fund was recovered by the protracted and laborious efforts of the attorneys; that they rendered valuable service to the State and to the policyholders; that they should be well paid; and that it would not be unjust to pay them from the fund rather than leave them the uncertainty of procuring an adequate appropriation from the General Assembly. All that may be conceded, but we are bound to construe the law as we think it is, not as we think it should be.

Our preliminary rule in prohibition should be and is hereby made absolute. All concur.