Floyd E. JACOBS and John T. Barker,
Appellants,

v.

C. Lawrence LEGGETT, Superintendent of
the Insurance Department of the State of
Missouri; George H. Bates, Treasurer of
the State of Missouri; Haskell Holman,
Auditor of the State of Missouri; Mount
Etna Morris, Director of Revenue of the
State of Missouri, Respondents.

No. 44254.

Supreme Court of Missouri.

Nov. 12, 1956.

William H. Becker, Columbia, Walter A. Raymond, Floyd E. Jacobs, pro se, John T. Barker, pro se, Kansas City, for appellants.

John M. Dalton, Atty. Gen., Harry H. Kay, Asst. Atty. Gen., for respondents.

STORCKMAN, Judge.

This is a suit for the recovery of attorneys' fees for services rendered by the plaintiffs pursuant to a contract with the superintendent of the Department of Insurance of the State of Missouri. The superintendent, the treasurer, the auditor and the director of revenue of the State of Missouri are sued in their official capacities. Plaintiffs' petition is in two counts: the relief sought in the first count is to recover the sum of $275,000 and to impress a lien on a specific fund, together with other relief; the second count is for a declaratory judgment. Defendants filed a motion to dismiss which the trial court sustained on the ground that plaintiffs' petition failed to state a claim upon which relief could be granted. In due course the plaintiffs appealed.

The essential allegations of Count I of plaintiffs' petition are: In June, 1930, Joseph B. Thompson, then superintendent of the Insurance Department of the State of Missouri, with the approval of the governor and the attorney general, employed the plaintiffs "to institute proceedings against * * * stock fire insurance companies for restitution of excessive premiums collected and held by the companies in violation of the ten per cent rate reduction order" made by the superintendent on October 9, 1922. With respect to compensation, the contract provided that if the plaintiffs and their associates were successful in recapturing all or any part of the undistributed residue of the excess premiums collected by the companies in violation of the reduction order, the plaintiffs were to be paid a reasonable contingent fee out of the recaptured funds. Glenn C. Weatherby, a practicing attorney, was also employed under a similar agreement to assist in the collection of the residue of the unreturned excess premiums. The plaintiffs performed the duties of their employment and recovered from the insurance

companies the sum of $2,751,000. Eventually this fund was placed in the custody of the superintendent of insurance.

The Circuit Court of Cole County allowed the plaintiffs and their associate Weatherby attorney fees in the aggregate sum of $412,500, being fifteen per cent of the fund recovered, to be paid out of the recaptured funds. On appeal the Supreme Court of Missouri reversed the award, holding that plaintiffs and their associate Weatherby were lawfully employed and had performed their services, but because of the insurance code the plaintiffs could not be paid out of the impounded restitution fund and could only be paid as other expenses of the insurance department were paid. Aetna Ins. Co. v. O'Malley, 343 Mo. 1232, 124 S.W.2d 1164, 1168.

In 1941 the General Assembly enacted the statute, which is now Section 379.395 RSMo 1949, V.A.M.S., providing for the escheat to the State of Missouri of unclaimed funds held by the superintendent of insurance. Pursuant to the escheat law the superintendent, in 1946, made a finding that no further owners or claimants were entitled to participate in said fund, and paid the residue of the fund, amounting to $2,160,871.32, to the state treasurer.

After the passage of the escheat act plaintiffs and Weatherby filed a suit in equity to impress a lien upon the fund. The trial court dismissed plaintiffs' petition, which action was affirmed on appeal, the supreme court holding that the plaintiffs were not entitled to present their claims by virtue of the provisions of § 379.395. Weatherby v. Jackson, 358 Mo. 542, 215 S.W.2d 742.

In 1951 the Board of Fund Commissioners, acting as provided by law, undertook to transfer the fund to the general revenue fund of the state free and clear of all claims including that of the plaintiffs. Prior to the filing of the present case the plaintiffs repeatedly presented their claims to the defendants and to the General Assembly for payment without success.

Before the decision in Aetna Ins. Co. v. O'Malley, 343 Mo. 1232, 124 S.W.2d 1164, Weatherby had been paid from the fund on account of attorney fees the sum of $42,500 and Lauf and Cook for their services as custodians of the fund had been paid the sum of $100,000. Thereafter the attorney general sued these parties to recover the sums so paid, which actions were settled and disposed of by permitting Weatherby and Lauf and Cook to retain the sums so paid upon their releasing the state from any further claims. The disposition of the claims against Weatherby, Lauf and Cook was accepted and approved by the Board of Fund Commissioners.

The plaintiffs allege that this handling and disposition of the claims against Weatherby, Lauf and Cook deprived the plaintiffs of equal protection of the laws. They also assert that their constitutional rights have been violated in that they have been deprived of their right to contract, have been denied due process of law, and their property has been taken without just compensation. Plaintiffs allege that the reasonable value of their services rendered "to the Superintendent of the Insurance Department, and to the policyholders from whom the premiums had been wrongfully collected and had not been refunded is the sum of Two Hundred Seventy Five Thousand Dollars ($275,000.00)."

Other related decisions referred to in the petition are: State ex rel. Abeille Fire Ins. Co. v. Sevier, 335 Mo. 269, 73 S.W.2d 361; Aetna Ins. Co. v. Hyde, D.C., 34 F.2d 185; Aetna Ins. Co. v. Hyde, 327 Mo. 115, 34 S.W.2d 85; State of Missouri ex rel. and to Use of Abeille Fire Ins. Co. of Paris v. Sevier, 293 U.S. 585, 55 S.Ct. 99, 79 L.Ed. 680; Aetna Ins. Co. v. O'Malley, 342 Mo. 800, 118 S.W.2d 3.

Plaintiffs allege that they have no adequate remedy at law and that they have exhausted all remedies, judicial, legislative and administrative. By the prayer of the first count of the petition the plaintiffs sought: (1) An injunction against defend-

ants transferring said fund to the General Revenue Fund prior to the time plaintiffs are paid therefrom. (2) An adjudication that plaintiffs' constitutional rights had been violated. (3) A determination that the fund is liable for payment to plaintiffs for services rendered. (4) An adjudication that defendants, and each of them, who transfer, deliver, withdraw or spend, any of said funds without payment to plaintiffs be held individually and collectively liable to plaintiffs for payment of their services. (5) Since no agency, person or court exercising judicial functions is open to plaintiffs for the preservation of their claims for services and no judicial remedy is provided therefor, that this court adjudge that plaintiffs are entitled to be paid out of this fund and that the court determine the amount the plaintiffs are entitled to and render judgment therefor. (6) An adjudication and declaration that the plaintiffs are entitled to have from said fund the sum of $275,000 and interest from the date of original allowance and their costs. (7) An injunction against the use of the restitution fund for any purpose until plaintiffs are paid; and (8) For other and further relief.

■ The plaintiffs' first contention is that they are entitled to a judgment impressing a lien upon the escheated funds in the hands of the state treasurer for the amount of their attorneys' fees. They say that they have heretofore been denied the right to recover because the unreturned premiums were a sacred fund which was required to be returned to the policyholders in full. They conclude that since the unrefunded portion of the fund has been paid into the state treasury pursuant to the escheat act, Section 379.395 RSMo 1949, V.A.M.S., "the reason plaintiffs could not be paid from the fund has ceased to exist."

The dominant and controlling reason the plaintiffs cannot be paid out of the fund is that the statutes constituting the insurance code have entirely supplanted the equitable lien for attorney fees and the method of collection upon which plaintiffs are relying. In Aetna Ins. Co. v. O'Malley, 343 Mo. 1232, 124 S.W.2d 1164, loc.cit. 1167, this court en banc held: "the superintendent of insurance had a right to employ the respondents, but *did not have the power to contract that their compensation should be paid out of this fund.*" [1]

The opinion refers to the cases holding that courts have inherent power to allow reasonable attorneys' fees to an attorney, lawfully employed, through whose efforts a fund is created for the benefit of various claimants and to impress a lien on the funds to secure the payment of such fee. Those cases were ruled inapplicable, the court holding, 124 S.W.2d loc.cit. 1167: "However, we do not believe these cases are in point for the reason that the above equitable principles have been superceded by the *insurance code,* of this state."

Plaintiffs now undertake to avoid the force and effect of this holding by contending that the court used the word "superseded" in the sense of "suspended." We intended no such limited or strained meaning. The decision, as well as others since rendered, shows an intent to use the word in the full vigor of its meaning: "to make void or useless, especially by a superior power," "to cause to be set aside," "to render obsolete" and "to take the place of." See also Weatherby v. Jackson, 358 Mo. 542, 215 S.W.2d 742; Barker v. Leggett, D.C., 102 F.Supp. 642.

■ The statutory provisions of the insurance code with respect to the payment of the expenses of the department are exclusive and became a part of plaintiffs' contract of employment as fully as if written therein. When the plaintiffs undertook their employment they must be deemed to have forsaken all other methods of compensation.

In State ex rel. Carwood Realty Co. v. Dinwiddie, 343 Mo. 592, 122 S.W.2d 912, 914, this court en banc ruled: "The petition

1. Italics within quotations have been supplied unless otherwise noted.

in question also asks the court to determine if certain lawyers have a lien on these funds for services rendered the Superintendent in resisting the rate increase. Section 5678, R.S.Mo.1929, Mo.St.Ann. § 5678, p. 4344 [V.A.M.S. § 374.120], provides that the Superintendent may, with the approval of the Governor, employ counsel for the purpose of enforcing the insurance laws, except in criminal prosecutions, but he is not given authority to pay counsel out of any funds belonging to the policyholders. *He must pay counsel in the same way as any other expense of the Insurance Department is paid.* Aetna Insurance Co. v. O'Malley [343 Mo. 1232, 124 S.W.2d 1164]."

In State ex rel. Lucas v. Blair, 346 Mo. 1017, 144 S.W.2d 106, loc.cit. 109, this court en banc, in dealing with a claim that attorneys fees be paid out of the fund created in the 16⅔% rate litigation, stated: "The General Assembly, by Section 5679, also has provided the methods by which *all* the expenses of the Insurance Department must be paid. We can not read into that section any distinction between 'current' expenses and 'emergency' expenses; *nor can we find where attorney's fees are excepted.* The section provides two methods only for the payment of expenses: out of appropriations from earned fees, or by assessment against the companies. The reference in this section to 'proceedings against any company,' etc., becomes clear when read in connection with Section 5685, Revised Statutes Missouri 1929, Mo.St.Ann. § 5685, p. 4348, which specifically provides the method for paying such expenses. The plaintiff Weatherby is not seeking payment by either method provided by the statutes." The statutes referred to are now Sections 374.160 and 374.220 RSMo 1949, V.A.M.S., respectively.

Plaintiffs contend that their situation falls within the rule of the cases which hold that when the reason for a rule disappears the rule itself no longer exists; this on the theory that they were denied recovery from the fund in previous cases because the rights of policyholders in the fund had not been terminated. This fund was for the benefit of the policyholders, but apart from that, the real reason plaintiffs could not resort to the fund was because the insurance code provided exclusive methods for the payment of the expenses of the department, including attorneys fees. The insurance code still stands as an insurmountable barrier to plaintiffs' claim of an equitable lien.

Plaintiffs' claim to a lien on the fund was consistently denied while the fund was subject to the claims of policyholders. They have no other or greater right now that the fund has been released by the superintendent of insurance and paid into the state treasury. Nothing has occurred to create any right where none existed before. We approve the holding of the three-judge federal court on this question, Barker v. Leggett, D.C., 102 F.Supp. 642, 644–645: "When the State takes property by escheat, the State's position is like that of an ultimate distributee, in default of other statutory distributees. State v. Phoenix Sav. Bank & Tr. Co., 60 Ariz. 138, 132 P.2d 637, 639; State, by Parsons v. Standard Oil Co., 5 N.J. 281, 74 A.2d 565, 572. Mr. Justice Cardozo once said: 'The state as the ultimate owner is in effect the ultimate heir.' In re Melrose Ave., 234 N.Y. 48, 136 N.E. 235, 236 [23 A.L.R. 1233]. The United States Supreme Court has distinctly held that the right of escheat is a right of succession, rather than an independent claim to the property escheated. Christianson v. King County, 239 U.S. 356, 370, 36 S.Ct. 114, 60 L.Ed. 327. The result of that is this: 'The State's right is purely derivative; it takes only the interest of the unknown or absentee owner.' Standard Oil case, supra, 5 N.J. 281, 74 A.2d 565, 573. Consequently, that which escheats to the State of Missouri under the statute here challenged by plaintiff is the title of policyholders to the fund in question, and not an independent taking or vesting of the fund in the State, so as to make the undistributable portion of the fund one directly recovered by plaintiff for the State, under his contract of employment, as plaintiff now contends."

■ It is doubtful whether plaintiffs at this time have any standing to contend that their constitutional rights under the Fourteenth Amendment and Section 10, Article I of the Constitution have been violated. The law is well settled that constitutional objections must be raised at the first opportunity. Laret Investment Co. v. Dickmann, 345 Mo. 449, 134 S.W.2d 65. A constitutional question may be waived by failure to so present it. Smith v. Citizens Bank of Gerald, 232 Mo.App. 906, 106 S.W.2d 45.

The question of plaintiffs' right to be paid their attorney fees from the fund has been squarely before this court on two previous occasions. Aetna Ins. Co. v. O'Malley, 343 Mo. 1232, 124 S.W.2d 1164; Weatherby v. Jackson, 358 Mo. 542, 215 S.W.2d 742. They had these opportunities to make timely objections and failed to do so. In Cantrell v. City of Caruthersville, D.C., 128 F.Supp. 637, affirmed 8 Cir., 222 F.2d 428, the plaintiff landowners had brought seven suits in the state court involving the identical dispute without raising constitutional questions. The court held, 128 F. Supp. loc.cit. 639: "Whatever grounds plaintiffs had to assert a constitutional question was present from the first suit. But only now would plaintiffs assert it. The state courts were adequate to adjudicate it. That it was not is due solely to laches on the part of plaintiffs. That the courts shall not be made the unseemly vehicle for endless and interminable litigation, we hold the right, if any, has been waived. See Utley v. [City of] St. Petersburg, 292 U.S. 106, 54 S.Ct. 593, 78 L.Ed. 1155."

Aside from the question of laches and waiver resulting from failure to raise constitutional questions at the earliest opportunity, it is clear to us that plaintiffs' objections are without merit. They contend that they have been denied equal protection of the law in violation of the Fourteenth Amendment to the Constitution of the United States in that Weatherby and Lauf and Cook by way of settlement were permitted to keep the sums which had been paid to them out of the fund prior to the decisions of this court holding such payments illegal. Our decisions have uniformly held that the fees of Weatherby and of Lauf and Cook, as well as the plaintiffs, could not lawfully be paid out of the fund. Aetna Ins. Co. v. O'Malley, 342 Mo. 800, 118 S.W.2d 3; Aetna Ins. Co. v. O'Malley, 343 Mo. 1232, 124 S.W.2d 1164; Weatherby v. Jackson, 358 Mo. 542, 215 S.W.2d 742.

■ The Fourteenth Amendment "is not a guaranty of equality of operation or application of state legislation on all citizens of a state. * * * The equality guaranteed and required by it is equality of right and not of enjoyment; and discrimination in the grant of mere favors is not a denial of equal protection." 16A C.J.S., Constitutional Law, § 502, pp. 298, 299.

In the case of Barker v. Leggett, D.C., 102 F.Supp. 642, 645, where an identical claim was made, the court held: "The contention of plaintiff that he is being denied the equal protection of the law, because the State has not compelled Lauf, Cook and Weatherby to repay to the fund the various sums paid to them, but, on the contrary, has compromised litigation instituted by the State looking to that result, is without merit. In Weatherby's case, supra, and in Aetna Ins. Co. v. O'Malley, 342 Mo. 800, 118 S.W.2d 3, the payments so made from the fund to said parties were held to be illegal under State law by the Supreme Court of Missouri. The refusal of the State to countenance further illegal payments to be made from the fund in question cannot be held a denial of equal protection of the law. Meyer v. Territory of Hawaii, 9 Cir., 164 F.2d 845, 849."

■ Moreover, there is this significant factual difference. In consideration of their being permitted to keep the amount paid them on account, Weatherby, Lauf and Cook released any further claim to compensation for their services. Plaintiffs have not released their claim and are still making claim in the full amount.

■ Plaintiffs further contend that their rights under the Fourteenth Amendment and Section 10, Article I of the Constitution of the United States have been violated because the plaintiffs' claim of right to be paid out of the fund in accordance with their contract provision has been denied. The right of contract is not unqualified and absolute, but is subject to reasonable regulation and restriction in the public interest. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703; Yeiser v. Dysart, 267 U.S. 540, 45 S.Ct. 399, 69 L.Ed. 775. The precise question presented here was decided in State ex rel. Lucas v. Blair, 346 Mo. 1017, 144 S.W.2d 106, 109 [7], wherein this court en banc stated: "Statutes defining and limiting the powers of the superintendent in the transaction of public business do not unconstitutionally impair his freedom of contract *nor the freedom of those who contract with him.*"

■ Nor has any property right of the plaintiffs been taken without just compensation. It follows from what has been said that plaintiffs acquired no property right by reason of their abortive effort to contract for a share in the restitution fund.

■ Plaintiffs assert that the enactment of the escheat law, Section 379.395 RSMo 1949, V.A.M.S., and the transferral of the fund to the state treasury, impaired the obligation of plaintiffs' contract. The obligation of plaintiffs' contract was not to be paid out of the fund but as provided by the insurance code. This being the case, the escheat law did not and could not deprive the plaintiffs of any constitutional rights. The contract clauses of the constitution do not create contractual obligations where none existed before. As stated in Griffith v. State of Connecticut, 218 U.S. 563, 31 S.Ct. 132, 134, 54 L.Ed. 1151, "The contract clauses of the Constitution of the United States 'does not give validity to contracts which are properly prohibited by statute.'"

Plaintiffs further contend that they have been deprived of a judicial remedy, thereby denying them due process of law. The remedy denied is their alleged right to be paid out of the fund recovered. They did not and could not have any valid right to be so paid because they contracted under the insurance code which provides for other means of compensation as well as authorizing the employment. State ex rel. Lucas v. Blair, 346 Mo. 1017, 144 S.W.2d 106; State ex rel. Missouri State Life Ins. Co. v. Hall, 330 Mo. 1107, 52 S.W.2d 174, 178 [7].

We rule these assignments against the plaintiffs and hold that they have not been deprived of constitutional rights.

The plaintiffs have no rights in the fund upon which they are making a claim. It follows that the trial court did not err in holding that Count I of plaintiffs' petition did not state a claim upon which relief could be granted.

The second count of plaintiffs' petition reads as follows:

"For their second count in their second cause of action and claim for relief, the plaintiffs adopt the averments of paragraphs 1 to 32 inclusive of Count I.

"Wherefore, the plaintiffs pray for declaratory judgment as follows:

"(A) Judgment declaring the rights of the plaintiffs and each of them under the contract of employment mentioned in Paragraph 12.

"(B) Judgment declaring and determining the manner and presentation by which plaintiffs and each of them are entitled to secure the sums owing to them and each of them by reason of their rendition of services under said contract.

"(C) Judgment declaring and finding the responsibilities and duties of the defendants and each of them in their official capacities with respect to the auditing, allow-

ing, budgeting, determination of the amount and payment of the claims of the plaintiffs and each of them.

"(D) Judgment declaring and finding the rights of the plaintiffs and each of them in respect to the undistributed and unrefunded residue of the ten per cent rate restitution fund.

"(E) Judgment declaring and finding that the undistributed and unrefunded residue of the ten per cent rate restitution fund now in the hands of and under the control of the defendants is subject to prior rights of the plaintiffs before the same can be expended for general revenue purposes.

"(F) Judgment defining and declaring reasonable value of the services rendered by the plaintiffs and each of them for contract of employment referred to in Paragraph 12.

"(G) Judgment determining, declaring and finding that the defendant Superintendent of the Insurance Department in his official capacity is liable for the sums owing to the plaintiffs and each of them by virtue of their rendition of services under the contract of employment referred to in Paragraph 12, and that the said defendant Superintendent of the Insurance Department is required to pay said sums out of the funds in his hands appropriated by law for payment of personal services; and that the Superintendent of the Insurance Department has the power and authority by law to assess the insurance companies doing business in the State of Missouri for any sums required to pay plaintiffs or to make up any deficits in the operation of the Insurance Department of the State of Missouri."

Plaintiffs assert in their brief that they "have exhausted every effort to cause their claim for compensation to be handled and treated lawfully, as any other expense of the Department" and refer us in particular to paragraphs 17 and 27 of their petition, which are as follows:

"17. The plaintiffs repeatedly caused their claims to be presented to the defend-

ants and their predecessors in office and to the General Assembly of the State of Missouri without result. The General Assembly of the State of Missouri is, under the constitution of Missouri, the paramount legislative authority of the State and a separate and coordinated branch of the state government. Said General Assembly is a purely political body, exercises no judicial functions and is immune to judicial process and suit. . Finally, plaintiffs and their associate caused their claims to be presented to the defendants and to the Sixty-Fifth General Assembly of the State of Missouri at the session of 1949 by the introduction of a formal bill for payment for their services rendered in the aforesaid litigation, all without avail. Said bill was defeated and rejected by said General Assembly and failed to pass.

\*   \*   \*   \*   \*   \*

"27. That the plaintiffs caused formal demand for auditing, allowance and payment of their claims for attorney fees for services rendered in the ten per cent rate restitution litigation as aforesaid, to be served upon the defendants, and have repeatedly requested payment without avail, and the defendants herein and their predecessors in office have failed and refused to make any payment to the plaintiffs or to recognize their claims, or to give any response whatsoever to their formal or informal demands for payment. That the refusal to hear, audit, allow and pay the said claims of the plaintiffs is a violation of the rights of the plaintiffs under the State and Federal Constitutions as hereinafter set forth in this complaint."

In considering whether Count II states a claim upon which relief can be granted, we must exclude from our consideration plaintiffs' contention that they are entitled to have an equitable lien impressed upon the recaptured premium fund and to have payment made out of that fund in accordance with the provision for compensation in their employment contract. That issue has been decided adversely to

the plaintiffs and declaratory judgment procedures cannot be used to litigate questions as to which a former judgment is conclusive. Cantrell v. City of Caruthersville, Mo., 267 S.W.2d 646, 648 [5].

The pleadings allege that the plaintiffs have been unsuccessful in securing payment through the General Assembly; that they have "caused formal demand for auditing, allowance and payment of their attorney fees * * * to be served upon the defendants and have repeatedly requested payment without avail"; that the defendants have failed and refused to pay the plaintiffs, to recognize their claims, or to give any response to formal or informal demand, and that such refusal is in violation of the constitutional rights of the plaintiffs. The question presented is whether the facts alleged are sufficient for the courts to render a definitive judgment disposing of the controversy.

The case of City of Joplin v. Jasper County, 349 Mo. 441, 161 S.W.2d 411, involved a controversy between the city and county as to their correlative rights, duties and obligations under existing statutes to the poor and indigent sick of the county residing in the City of Joplin. In discussing the nature of declaratory judgment relief, the opinion states, 161 S.W.2d loc. cit. 412: "While the creation, adoption and application of the Declaratory Judgments Act, Mo.R.S.A. § 1126 et seq. [V.A.M.S. § 527.010 et seq.], is an epochal achievement, especially for the legal profession, it is not a panaceal legal remedy. It represents a great advance in judicial methods and concepts but it must be used and operate within the limits of the constitutional powers and duties of courts. Its political and social utility, of necessity, lies somewhere between the ideals of its draftsmen and the strict construction of some of the courts. See and compare: Borchard, Declaratory Judgments, and the collections of cases in 9 Uniform Laws Annotated, pp. 215–260; Anderson, Declaratory Judgments; 12

A.L.R. 52; 19 A.L.R. 1124; 50 A.L.R. 42; 68 A.L.R. 110; 71 A.L.R. 1426; 87 A.L.R. 1205; 101 A.L.R. 689 and 114 A.L.R. 1361. Our own notion is that its application must be within the more moderate and yet liberal limits suggested by Judge Laurance M. Hyde in 26 Wash. U.L.R. 468, 490–491."

The Joplin case further lays down these standards by which the instant case must be judged, 161 S.W.2d loc. cit. 413: "But, when it is attempted to be so used and a judicial declaration is sought the court must be presented with a justiciable controversy—one appropriate for judicial determination—a case admitting of specific relief by way of a decree or judgment conclusive in character and determinative of the issues involved. Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000; Anderson, Declaratory Judgments, Sec. 8, p. 27; 16 Am.Jur., Sec. 46. There must be a sufficiently complete state of facts presenting issues ripe for determination before a court may declare the law. 'A mere difference of opinion or disagreement or argument on a legal question affords inadequate ground for invoking the judicial power.' Borchard, Declaratory Judgments, p. 77; State ex rel. La Follette v. Dammann, 220 Wis. 17, 264 N.W. 627, 103 A.L.R. 1089."

In State ex rel. Chilcutt v. Thatch, 359 Mo. 122, 221 S.W.2d 172, loc.cit. 176, we stated: " * * * the question presented must be appropriate and ready for judicial decision. [Citing cases.] Plaintiffs' petition must present a real and substantial controversy admitting of *specific relief* through a decree of a *conclusive character*, as distinguished from a decree which is merely advisory as to the state of the law upon purely hypothetical facts." See also Cotton v. Iowa Mut. Liability Ins. Co., 363 Mo. 400, 251 S.W.2d 246, 249.

In order to render a conclusive judgment disposing of the entire contro-

versy we would have to define and declare the reasonable value of the services rendered by the plaintiffs, as requested in section (F) of the prayer, and then order and direct the superintendent and other defendants to follow certain procedures to obtain the funds to pay the judgment so rendered. We have held in Barker v. Leggett, Mo.Sup., 295 S.W.2d 836, that we cannot render judgment fixing the amount of such attorney fees in an action in quantum meruit. Nor do we think that we can use declaratory judgment procedures to do so. We have held that the insurance code precludes our interfering with the superintendent's administration of his department. State ex rel. Missouri State Life Ins. Co. v. Hall, 330 Mo. 1107, 52 S.W.2d 174, 177 [3]. The declaratory judgment act does not purport to authorize us to invade this forbidden field.

■ Plaintiffs contend that the constitutional provision for judicial review of acts of an administrative officer, Art. V. § 22, V.A.M.S., authorizes us to use "the declaratory judgment action as a permissible method of review." This constitutional provision authorizes a "direct review by the courts *as provided by law.*" Section 536.100 of our statutes outlines the procedure for such review and further concludes: "Unreasonable delay on the part of any agency in deciding any contested case shall be grounds for an order of the court either compelling action by the agency or removing the case to the court for decision." This seems to be the only method provided by law for our review of the acts of the superintendent or making a decision in the event of his default. Plaintiffs do not contend the instant action is any such proceeding and the facts pleaded do not show compliance with the prerequisites for such method of review.

Plaintiffs say that they "have exhausted every effort" to have their claim for compensation handled and paid as any other expense of the department. Whether they have done so or what, if anything, we think should be done in order to comply with the statutes is beyond the questions properly presented for decision. Such a declaration would be advisory in nature only and not within the purview of the declaratory judgment act, as was aptly stated in the article by Judge Laurance M. Hyde in 26 Wash. U.L.Q. 468, 474, as follows: "One thing is certainly now settled, and that is that a declaratory judgment is neither an advisory opinion nor a decision of a moot question, because it must involve a real controversy in which the result would be *res judicata* between the parties. Courts sometimes inadvertently decide moot questions incidentally in the course of an opinion. However, these parts of an opinion are classed as *obiter dictum,* and such declarations are not binding as precedents. An advisory opinion would be in the same class and could be binding on no one."

Plaintiffs cite and rely heavily upon the case of New Franklin School Dist. No. 28, Howard County v. Bates, 359 Mo. 1202, 225 S.W.2d 769. That was a suit for declaratory judgment to determine the disposition of fines collected from insurance companies in quo warranto proceedings. The case is readily distinguishable because there the court was able to make a definitive allocation of the funds and conclude the controversy. The instant case does not lend itself to such conclusive treatment.

■ Although Count II of plaintiffs' petition, as constituted by incorporation of specified paragraphs of Count I, alleges violation of constitutional rights, no constitutional questions are presented or briefed with respect to the denial of declaratory relief under Count II, and any such objections are therefore waived.

Our conclusion is that the pleadings under Count II are insufficient to show that this is a case "admitting of specific relief by way of a decree or judgment conclusive in character and determinative of the issues involved."

The judgment of the trial court should be affirmed and it is so ordered.

LEEDY, C. J., and DALTON, HOLLINGSWORTH, HYDE and WESTHUES, JJ., and ANDERSON, Special Judge, concur.

EAGER, J., not sitting.